JOHN G. HAGERLE, Appellant, v. JAMES O. BEEBE, Appellee.

Private Way: PERMISSIVE USE: EVIDENCE. In an action to re-
1    strain an adjoining landowner from closing a road which had been used in common, the evidence is considered and held to show that plaintiff's use of the way was permissive and that he had acquired no prescriptive rights in the same.

Reopening Case: COSTS. A trial court has no power on its own
2    motion to reopen a cause after final submission, but where this was done and one of the parties submitted further evidence all costs accruing on the further hearing should be taxed to him.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

FRIDAY, APRIL 15, 1904.

SUIT in equity to enjoin defendant from obstructing a highway or private right of way claimed by plaintiff over defendant's land. The trial court dismissed plaintiff's petition, and he appeals.—*Modified.*

*C. L. Poor* for appellant.

*Seerley & Clark* for appellee.

DEEMER, C. J.—The controversy is over a strip of land designated on the following plat as the "road in dispute:"

This plat also shows the respective tracts of land owned by the plaintiff and the defendant. Plaintiff purchased his land from one Flad, and claims that the road is either a public highway or that it passed to him as a private way appur-

tenant to the land. The defendant is the grantee or successor in interest of one W. P. Murphy, who owned the land at the time it is claimed the way was established. There is no claim that this way was ever legally established, or that there was ever any dedication thereof to the public. Plaintiff's right, if he has any, is based solely upon prescription or adverse user.

The claim to a public highway is without any foundation in the evidence. Not only plaintiff's grantor, but plaintiff himself, has so treated this road, by fencing it up at the south and east sides of the tract, as to negative the thought that it is or ever was a public highway. The land owned by defendant was uninclosed by fences until about the year 1873. Before that it was used as a pasture and as woodland, and was traveled over much as such land generally is in a new and unsettled country. There was a small brickyard on it at one time, and there is a spring near the center of the land. The elder Murphy made a road from the public highway on the north down to this brickyard, which was close to the east line of plaintiff's land, and for the purpose of taking his stock to the spring that they might have water. Plaintiff's grantor continued this road down to the vicinity of his house, which was near the center of the tract of land owned by plaintiff. Plaintiff's grantor fenced his east line about the year 1856, and left a gate therein near this road, whereby he could pass onto the Murphy land, and to the public highway running north between sections twenty and twenty-one. This was done with Murphy's permission. Before that plaintiff's grantor had many ways of getting to the highways. He went east to the highway on section 28, south to what is called the "Skunk River Road," but more frequently north and northwest to the highway on section twenty-nine, which continued on through B. F. Murphy's land, as shown on the plat. No complaint was made when defendant's grantor, Murphy, fenced his lands, but plaintiff or his grantor asked permission to pass through it, and he also asked permission to put in a gate. This was

1. PRIVATE way: permissive use: evidence.

granted. Afterward Murphy told him he could not use the
road unless he kept the gate closed. This he promised to do.
The road across Murphy's land followed no particular track,
although there were some small bridges which were main-
tained by the parties jointly  Occasionally there was some
work done to make the road passable, but as a rule this was
done jointly, or with Murphy's permission. Before Flad and
plaintiff fenced up their land, they did their heavy hauling
over other roads, either the one running north and a little
west, or the one running east and south. They themselves
closed up these roads, and left the one they now insist was a
private right of way, although it is conceded that they used
some of the others as much or more than they did this one.
Although plaintiff's land is away from any regular highway,
and he has no means of reaching his house except over some
private road, the case does not call for an application of the
rule of way by necessity; hence we give that proposition no
further consideration.

The truth is that, before any of these lands were fenced,
there was the usual travel over the surrounding uninclosed
lands to reach the highways, to procure wood and water, to
haul brick, etc., ordinarily prevailing in new and unsettled
countries. Neither plaintiff nor his grantor used Murphy's
land any more than they did other tracts which surrounded
them. Indeed, they did not, on account of the topography of
the country, use it as much for heavy hauling. When they
fenced their lands, they closed the road to the north, and
then went almost directly east for a time, until the owner to
the east closed the opening in his fence. They then went
over Murphy's land, but it was with his permission, and,
after he fenced his land, on condition that they would keep
the gate closed. Their use was always permissive. Indeed,
plaintiff many times declared that he had no right over
Beebe's land. As the use was permissive, it could not be ad-
verse; surely not so long as the use was referable to that per-
mission. We are fully convinced that plaintiff has fenced
himself in, and that whatever use he made of defendant's land

.was at all times permissive. This finding is wholly based up-
on testimony received before the reopening of the case after
the first submission, to which we shall presently refer.. Hav-
ing found that there is no private right of way by prescrip-
tion, the case is·at an end; for even appellant's counsel prac-
tically concede that the evidence is insufficient to justify a
finding that there is a public highway over and across defend-
ant's land.

Referring now to the reopening of the case, which.order
is vigorously complained of by plaintiff's counsel, we find
that the case was fully submitted to the court in March of the
year 1902. Thereafter the following proceedings

2. REOPENING
case: costs.   were had, as disclosed by the bill of exceptions:
"At the September, 1902, term of said court, and on or about
the 16th day of September, the judge who tried said cause an-
nounced from the bench in the presence of counsel for both
parties that he had been unable to make up his mind how the
case should be decided; that under the law as applied to the
case, the plaintiff having given evidence tending to show the
existence and use of a way as alleged, the burden rested upon
the defendant to show that the use of the way was permissive,
and that, if either side or both sides could produce further
testimony which would throw additional light upon the case,
the court would reopen the case, and hear such further evi-
dence, or, if the parties would consent, the court would trans-
fer the case for retrial to another judge, who might not en-
tertain the same doubts about it. Attorneys for both sides in
open court declined to agree to transfer to ·another judge.
Counsel for plaintiff informed the court that he had no
further evidence to introduce." Defendant thereafter took
the depositions of some witnesses, plaintiff's counsel not ap-
pearing to cross-examine. These depositions were filed in the
district court in January of the year 1903. Plaintiff moved
to suppress these depositions, but his motion was overruled.
Without being noticed for trial, the district court at its Janu-
ary term, 1903, and in the absence of plaintiff's counsel, al-
though they were notified to attend again, took up the case

for trial, and heard the oral testimony of some seven witnesses who were offered by the defendant, and in February of year 1903 the trial court, after hearing all of the evidence, and considering it with that introduced on the original hearing, entered a decree dismissing plaintiff's petition.   Thereafter plaintiff moved to tax the costs accrued since the original submission to the defendant.  This motion was overruled.  It will be observed that neither party filed a motion to reopen the case.  The court assumed to do so long after final submission upon its own motion.  This was entirely irregular, and without authority of law.  *Dunn v. Wolf,* 81 Iowa, 688; *Stein v. Roeller,* 66 Minn., 283 (68 N. W. Rep. 1087); *Farmers' Bank v. Griffith,* 2 Wis., 443; 15 Ency. of Pleading & Practice, 326.  The depositions taken after the case was reopened should have been suppressed, and the court was in error in receiving the oral testimony adduced on the so-called second hearing.

We have disposed of the case on the testimony taken before the case was reopened, and refer to these irregular proceedings not only for the purpose of announcing a correct rule of practice, but to determine the question of costs.  The court erred in overruling the motion to retax costs.  It should have been sustained, and all the costs accruing after the original submission should be taxed to the defendant.  About one-third of the costs on this appeal are due to this erroneous order of the trial court, and the defendant should pay this proportion thereof.  While the decree dismissing plaintiff's petition is correct, the trial court erred in overruling plaintiff's motion to retax costs, and the cause must be remanded for a proper order in this respect.  Plaintiff will pay two-thirds and the defendant one-third of the costs of this appeal.— MODIFIED AND REMANDED.