D. W. HASTINGS v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

Flood waters: OBSTRUCTION: UNPRECEDENTED RAINFALL: INSTRUCTION.
1 In this action for flooding plaintiff's land by the obstruction of a creek defendant sought to show that it was the result of unprecedented rainfall, and there was evidence of high water in other

years. *Held,* that an instruction to the effect that although the water might have been as high many years ago on a single occasion that fact would not necessarily mean that the particular flood complained of was unprecedented, was properly refused.

**Same:** MEASURE OF DAMAGES. Where the evidence tends to show that the use of a farm as a whole is rendered more inconvenient and less profitable, because of the injury to some part thereof by flood water, the measure of damages is the difference in value of the entire farm immediately before and immediately after such injury, rather than the injury to the particular part of the land flooded.

**Railroad crossing:** EASEMENT: RIGHT OF ADJOINING OWNER. Permission to use a trestlework as a driveway for teams and cattle will not entitle a land owner to have the same maintained as a private railroad undercrossing, no matter how long such use may have continued.

**Same:** UNDERCROSSING: MAINTENANCE. The assurance by a railroad company that a bridge will be so constructed as to permit the cattle of an adjoining owner to pass under it, is not a recognition of the statutory right to an undercrossing, nor an assurance that such a crossing will be maintained, but such a right amounts to no more than an easement; and while the railroad company can not obstruct the passage it need not maintain it, in the absence of an express agreement to that effect, but this duty devolves upon the land owner.

**Same.** A land owner who is privileged to use an archway under a railroad as a passage for cattle may rightfully go upon the right of way and remove an obstruction therein to the passage of surface water and of his cattle.

**Flood waters:** OBSTRUCTION: DAMAGES. Where a railroad company negligently fails to maintain a sufficient opening under its tracks for the passage of surface water, thus causing a deposit of sediment in the bed of the stream and in the passageway under the track, to the injury of an adjoining owner, the expense of clearing the opening would be an element of the adjoining owner's damage. But where the land owner sues for failure to keep the archway open as an independent cause of action he can not recover for depreciation in the rental value of his farm.

*Appeal from Davis District Court.*—Hon. C. W. Vermillion, Judge.

FRIDAY, JUNE 10, 1910.

ACTION to recover damages to plaintiff's land and crops by flooding occasioned by the backing up of water in a stream due to the insufficiency of the opening left for the stream through defendant's railroad embankment, and also for damages caused to plaintiff by allowing a passageway for his cattle under defendant's track to become obstructed by the deposit of sediment. There was a general verdict for plaintiff in the sum of $637, of which amount it appears by special finding the jury allowed $300 on account of the obstruction of the cattle pass under defendant's track. From a judgment on the general verdict, defendant appeals. *Affirmed* on condition.

*Carroll Wright* and *J. L. Parrish*, for appellant.

*Payne & Goodson*, for appellee.

McCLAIN, J.—The stream known as "Soap Creek" flows south across plaintiff's land and through a bridge in defendant's railroad embankment, which bridge had prior to the injury complained of been reconstructed so as to leave a smaller opening than before for the passage of water. As the result of very heavy rains in June, 1905, as plaintiff alleges and as his testimony tends to show, the water was backed up in Soap Creek by reason of the insufficiency of the opening through this bridge so as to flood a portion of plaintiff's land and cause it to be washed into gullies, rendering it less suitable for cultivation. At the same time the growing corn on about twenty-eight acres of his land was destroyed. Twenty-five hundred feet west of the bridge above referred to is another bridge or culvert under defendant's track, through which a small stream flows to the northward emptying into Soap Creek above the bridge over that creek. When the railroad

embankment was first constructed there was trestlework
over this small stream in two or three spans, through one
of which by defendant's permission plaintiff allowed his
cattle to pass from the land which he occupied north of
the track to other land used as a part of the same farm
which was south of the track. In 1895 the defendant
commenced to replace this trestlework with a stone bridge
or culvert of but one opening, and plaintiff then notified
the defendant that the opening which he had been using
through the trestlework for the purpose of driving through
it with teams and having his stock pass through it from
one portion of his land to the other was necessary to
him in the convenient use of his farm, and that he claimed
a right to a good and sufficient underpass for stock and
a good wagon road sufficiently wide to permit the hauling
of hay, fodder, and other crops, and that, if defendant
failed to keep and maintain such passway and wagon road,
he would begin proceedings to compel defendant to keep
and maintain the same. Soon afterward he wrote to an
officer of the defendant that a passway put through the
arch which defendant was constructing would be impassable
a large portion of the year on account of the flow of
water and its freezing during winter so that it would be
impassable for stock, and suggested that a different pass-
way be provided for him. In response to this letter he
was assured by the official that the company expected to
leave him something there that would be all right for
cattle to pass, and that it would put in necessary paving.
Later the plaintiff again wrote to the officer of the de-
fendant company that the opening left under the bridge
in question was impassable for stock on account of quick-
sand at the approach to the arch, and that, if it was the
purpose of the company to force a crossing there, it must
be on account of unfamiliarity with the place, as it could
not be made passable except in dry times during summer,
and not at all in winter. Thereupon the officer assured

him that the bottom of the culvert would be paved with
rock, and so arranged that cattle could get through. Ten
years later an officer of the defendant company, in response
to some complaint about the obstruction of the passway,
assured the plaintiff that the section foreman had instruc-
tions to clean out the cattle pass, and that it would be
done in a few days. The evidence for plaintiff tends to
show that in August, 1904, the opening had become some-
what obstructed by the deposit of sediment at the north
end, and that after the flood of 1905 it was half filled
with sediment, so that cattle could not pass through. The
deposit of sediment was, however, not alone in the opening,
but also in the little valley of the stream extending north-
ward about one hundred and fifty feet through plaintiff's
land. The only complaint which appears to have been made
to the defendant was that in response to which the letter
above referred to promising the cleaning out of the sedi-
ment was written.

I.   Defendant sought to show that the rainfall oc-
casioning the flood in June, 1905, was unprecedented, for
the purpose of escaping liability on the ground that it was
not bound to anticipate and make provision

1. FLOOD WATERS:
obstruction:
unprecedented
rainfall:
instruction.

for such a flood. There was testimony for
plaintiff that in 1868 there was a flood dur-
ing which the water got higher in the Soap
Creek bottom than in 1905. The court gave a general in-
struction on the subject, the correctness of which is not
questioned, but defendant asked a specific instruction to
the effect that even though the water in the creek may have
been as high as in 1905 many years ago on one occasion, that
fact would not of itself necessarily mean that the flood of
1905 was not unprecedented. We do not think there was
any error in refusing this instruction. There was evidence
as to very high water in other years, and it was not neces-
sary to single out one particular previous flood, and say that
the occurrence of such a flood would not show that the

flood of 1905 was such as that it need not have been antici-
pated by defendant.

II.   Complaint is made of an instruction with refer-
ence to the claim for damages caused by injuries to plain-
tiff's land and crops on account of the flood of 1905, on
2. SAME: measure the ground that the jury was authorized
of damages.   by such instruction to allow the difference
between the fair market value of plaintiff's farm as it
was immediately before such injury and its corresponding
value immediately thereafter so far as such value was
diminished or decreased.   The ground of objection is that
the estimate of damage should have been limited to the
depreciation in value of the particular land involved in
the flood.   But the evidence tended to show that the use of
the farm as a whole was rendered more inconvenient and
less profitable on account of the injury to this particular
land which was washed into gullies, and made unsuitable
for use in the raising of crops.   Under such circumstances,
it is a well-settled rule in this state that the damages to
the whole farm may be estimated together.   *Bennett v.
City of Marion,* 119 Iowa, 473; *Parrott v. Chicago G. W.
R Co.,* 127 Iowa, 419; *Harvey v. Mason City & F. D.
R. Co.,* 129 Iowa, 465.

III.   In various ways the defendant raised the ques-
tion whether under the evidence it was liable in damages
for the injury to plaintiff resulting from the obstruction
by sediment of the crossing under the track
3. RAILROAD
   CROSSING:   through the stone arch or culvert; the con-
   easement:
   right of adjoin-   tention being that plaintiff had a mere
   ing owner.
license or easement which he could make
use of as he saw fit, but must keep in repair, while the
claim for plaintiff is that this undercrossing was a private
crossing furnished by defendant to plaintiff as the owner
of land on both sides of its railway as contemplated in
Code, section 2022, and which by the provisions of that
section the defendant was bound to keep in good repair.

We find nothing in the record to indicate that the passage-way through this stone arch was a private crossing furnished to the plaintiff by defendant in pursuance of any statutory duty to furnish him a crossing. The plaintiff had a grade farm crossing some little distance to the eastward of this stone arch and another grade crossing a short distance to the westward, and these crossings were maintained by the defendant so far as it appears in good condition for use. The only evidence as to the under-crossing through the trestlework of the bridge which existed before the construction of the stone arch was commenced indicates that plaintiff had without objection on · the part of the defendant been accustomed to drive his teams and have his cattle pass through such trestlework at one · side of the little stream. Such a permissive use, no matter how long continued, will not in itself ripen into a right to have such opening maintained as a private undercrossing. *Schrimper v. Chicago M. & St. P. R. Co.,* 115 Iowa, 35.

When plaintiff served notice on defendant of his objection to the closing of this undercrossing, he asserted that ever since the railway had been built the trestlework bridge had been so kept and maintained as to give him an under passway and road which he had constantly used and which was of · great value to him but he did not assert that he had a right to such undercrossing as a private crossing such as was contemplated by statute. As no response was ever made to this notice, the assertions of right therein were not acquiesced in at the time by defendant. Whatever acquiescence there was manifested by writing on defendant's part was in response to a request or suggestion that a passway under the track alongside of a culvert for the water would be more satisfactory and passable, and not more expensive to the company than the stone arch which defendant contemplated constructing, and, in re-

4. Same: undercrossing: maintenance.

sponse to this request, plaintiff was assured that the defendant expected to leave him something that would be all right for cattle to pass, and that the bottom would be so paved with rock so that cattle could get through it. We think this assurance on the part of defendant did not constitute a recognition of a statutory right on the part of plaintiff to have an undercrossing nor an assurance that such an undercrossing would be maintained for him in the future. The right thus conceded to plaintiff was no doubt more than a mere revocable license. It was an assurance which plaintiff had the right to rely upon that his cattle would be allowed to pass through this stone arch, and, perhaps more than this, that a stone paved way would be maintained which would render the passage a suitable one for cattle, although it was also used for the passage of the water of the stream, but it was certainly nothing more than an easement or a right to use such stone arch with the stone paving under it for the passage of cattle, and this right the defendant has not controverted. It has so arranged its right of way fences that defendant's cattle have had the opportunity at all times to pass under the stone arch from one part of plaintiff's farm to the other. But the grantor of an easement consisting of a right of way in the absence of any express stipulation is under no obligation to maintain the right of way in suitable condition for use. He is bound not to obstruct it, but further than that its maintenance is left to the grantee. *Joslin v. Sones,* 80 Iowa, 534; *Bellevue v. Daly,* 14 Idaho, 545 (94 Pac. 1036, 15 L. R. A. (N. S.) 992, 125 Am. St. Rep. 179); *Nichols v. Peck,,* 70 Conn. 439 (39 Atl. 803, 40 L. R. A. 81, 66 Am. St. Rep. 122); *Oney v. West Buena Vista L. Co.,* 104 Va. 580 (52 S. E. 343, 2 L. R. A. (N. S.) 832, 113 Am. St. Rep. 1066).

While it is true that a railroad company may by agreement with the landowner become bound to maintain

more than one private crossing in the discharge of its
duty to furnish a "causeway or other adequate means of
crossing" its tracks, yet the landowner is not entitled as
of right to an undercrossing, and, if the company has
provided a statutory crossing, the fact that it permits
a landowner to use an opening under its track does not,
in the absence of anything more, convert such opening
into a statutory private crossing which the company is
bound to maintain.   If the plaintiff should complain at
some future time that the surface crossings were not ade-
quate, nor properly maintained, it would be _no answer
on the part of defendant to say that this stone arch had
been agreed upon by the parties as a private way such
as is required by the statute.   It is not large enough to
admit the passage of teams hauling wagons loaded with
farm produce, and plaintiff could very properly insist
that it was not such a private crossing as the statute
contemplates.   See *Herrstrom v. Newton & N. W. R.
Co.*, 129 Iowa, 507.   If it is not such a crossing as the
plaintiff has accepted or is bound to accept, then we think
the defendant is under no obligation to maintain it for
his benefit as a statutory private crossing.

It appears that the obstruction of this stone arch
was due to the filling of the little valley to the north
with sediment, and that, when plaintiff did finally open
a small ditch through this sediment, he

5. Same.

reduced by at least a foot the depth of
the sediment in the arch.   There seems no reason to
doubt that had he kept open the course of the little
stream through his own land the bank of sediment would
not have formed in the arch.   But, if it had been
necessary for him to go upon defendant's right of way
for the purpose of constructing a ditch through which
the water might run so as to remove the dam formed by
the sediment, we think he would have had a right to
do so in view of the concession to him of the privilege

of using the arch as a cattle pass.  It may well be that a landowner has no right to go upon the company's track for the purpose of repairing a statutory private crossing at grade, for to allow him to do so would authorize an interference with the use of the track for the purpose of the operation of trains which might be very perilous to the public as well as to the company.  But we can see no reason in public policy for denying to plaintiff in this case the right to go through a stone arch which has a stone pavement and dig a ditch in the sediment deposited therein or otherwise remove the sediment, so that his cattle may pass through.  Certainly a railway company may grant a license or easement on its right of way so far as no interference with the operation of its road is involved.

If the defendant by its negligence in failing to maintain a proper opening through its embankment for Soap Creek caused a flood depositing sediment in the valley of this little stream and in the stone arch to the damage of plaintiff by obstructing the passage for his cattle as well as by causing the destruction of his crops, then no doubt the expense of again opening the archway would be a proper element of damage in an action for such negligence.  But plaintiff sued for damages on account of the failure of defendant to keep the archway open as an independent cause of action, and was allowed to recover by way of damages the depreciation in the rental value of plaintiff's farm for four years.  In allowing recovery on this basis we think that the trial court erred.

6. FLOOD WATERS:
obstruction:
damages.

As the jury has indicated by a special finding that the damage allowed on account of the obstruction of the archway as affecting the rental value of plaintiff's farm was $300, plaintiff may remit that amount of the verdict, and the judgment for the plaintiff for the balance of the general verdict will be allowed to stand.  In the absence

of such election within thirty days after the filing of this opinion, the judgment will be deemed reversed, and the defendant shall be entitled to a new trial.—*Affirmed on condition.*