C. W. WHITHAM, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

RAILROADS:   Under-Crossings — Interference — Private Privileges Yielding to Public Rights.   Public rights override private rights. The right of a landowner to exercise a mere *privilege* to use the passageway under a railway bridge for the passage of stock, etc., and the long exercise of such privilege, unaccompanied by the assumption of any active duty on the part of the railway company touching the maintenance of such passageway, must yield to the right and duty of the railway company to erect a new and different kind of bridge, when necessary in the interest of public safety.

*Appeal from Jefferson District Court.*—D. M. ANDERSON, Judge.

MONDAY, JANUARY 15, 1917.

PROCEEDING in equity to·obtain a mandatory injunction requiring the defendant company to remove a certain con-

crete pier erected by it over a stream on its right of way. The theory of the plaintiff is that he had a permissive right to use the space under the bridge as a passageway for cattle, and that the pier obstructs and interferes with the exercise of this right.    Decree for the defendant in the court below, dismissing plaintiff's petition.—*Affirmed.*

*Huglin & Rorick* and *Ralph H. Munro,* for appellant.

*Leggett & McKemey,* for appellee.

GAYNOR, C. J.—Plaintiff is the owner of about 144 acres of land.   Through this runs a creek known as Mitchell Creek. Prior to 1899, the defendant owned and operated a single line track, running east and west, through this land.   Defendant's right of way crossed this Mitchell Creek.   Over the creek, the defendant had a bridge with stone abutments. Under this bridge, it had constructed an under-crossing for the use of plaintiff.   This furnished plaintiff a good, substantial and satisfactory crossing for his cattle, and for hauling, under this bridge and across defendant's right of way from the north to the south, and was so used by the plaintiff. Later, the defendant company concluded to straighten its road and to put in double tracks.    To this end, it secured from the plaintiff a new right of way across his land, some distance from the old roadbed. On the 24th day of June, 1899, it purchased from the plaintiff, for a consideration, land sufficient for this purpose.   In said purchase, it agreed that the plaintiff should have a suitable underground crossing for stock and hauling, just like the one on the old right of way, and at a point where the new right of way crossed Mitchell Creek.   The land so purchased from the plaintiff was deeded to the defendant company, and the defendant took possession of the right of way, put in its double track, and built its bridge across Mitchell Creek, but failed to give

RAILROADS: under-crossings: interference: private privileges yielding to public rights.

plaintiff the underground crossing as agreed. Thereupon, plaintiff brought an action to compel the defendant to so do. This action was compromised, and the following stipulation entered into:

"This railroad company is to give said Whitham a grade crossing at a point west of the bridge over Mitchell Creek where the land is at grade with the track, just east of a line with the fence running south in the south 40 acres, with wing fences, within a reasonable time. They also agree to pay him the sum of $800.

"Said company agrees to allow Whitham to put a gate in the company's fence on the north side at the right of way and east of the wing fence that runs to the west side of said bridge, so as to let his cattle go back and forth under the bridge to his land on the north, at his own expense and risk.

"And the above is in full settlement and satisfaction of the above entitled action and in full for any claim for damages arising out of the alleged non-performance of contract for under-crossing under said bridge over Mitchell Creek.

"Signed December 17, 1902."

At the same time, and as part of the same transaction, plaintiff executed the following receipt:

"December 18th. To amount agreed upon in full settlement of the suit of *Chas. W. Whitham v. C., B. & Q. R. R. Co. and C., B. & Q. Ry. Co.*, now pending in the district court of Jefferson County, Iowa, wherein plaintiff seeks to compel the defendants to construct an under-crossing for him in accordance with a written agreement made with the C., B. & Q. R. R. Co., of date June 24, 1899. In consideration of this payment, Whitham releases the railroad company from all obligations imposed upon it under said contract of June 24, 1899, and agrees to accept in lieu of the crossing therein provided for a crossing at grade over the tracks of the railroad company, such crossing to be constructed with wing fences and gates, but without cattle guards, as shown by

memorandum of agreement, copy of which is hereto attached. Each party to pay their own costs.

"Charge: Const. R-w, No. 2, Fairfield to Beckwith.

"Received $800, in full payment of the above account. In consideration of the payment of said sum of money, I, Chas. W. Whitham, of Fairfield in the county of Jefferson and state of Iowa, hereby remise, release and forever discharge the Chicago, Burlington & Quincy Railroad Company of and from all manner of actions, causes of action, suits, debts and sums of money, dues, claims and demands whatsoever, in law or equity, which I have ever had or now have against said company, by reason of any matter, cause or thing whatever, whether the same arose upon contract or upon tort."

This agreement supersedes and takes the place of all other agreements entered into between the parties, and by this agreement, the rights here in controversy must be determined. After this stipulation was entered into, on December 17, 1902, the plaintiff claims that he accepted a crossing under the bridge for his cattle; that the crossing was at that time on a level with the land, both on the north and south sides of the bridge; that there was then a passageway about 25 feet wide, from the west abutment of the bridge to the top of the west bank of Mitchell Creek. This afforded a nice and safe passage for plaintiff's cattle. The creek comes from the northeast, and, after passing under the bridge, runs almost due south. After signing the stipulation, plaintiff leveled this passageway for the use of his cattle. He had then a passageway about 12 feet wide. This bridge remained standing upon piers, and we presume the passageway remained open until 1910, when a permanent concrete abutment was put in there, about 14 feet wide at the bottom and about 3 feet at the top.

The placing of this abutment, it is claimed, obstructed the particular passageway selected and used by plaintiff, and rendered the passage of cattle under the bridge, to say

the least, more difficult, if not dangerous, than it was prior to that time. It took from the plaintiff the use of this particular passageway for his cattle. It is practically conceded that a passageway still remains under the bridge for the use of the cattle, through which they could and did pass, though with more difficulty and danger, perhaps, than before. There are seasons of the year when the passage under this bridge, with this concrete abutment, is rendered quite impossible. This is traceable to weather conditions, floods, ice and snow. There were times and seasons when this passageway under the bridge was not available, even before the building of this concrete abutment, due to high water. The complaint here is that, in the building of this concrete abutment, the defendant violated its agreement with the plaintiff, and obstructed a passage to which he had acquired a right under that agreement; that the company ought not to be permitted to retain it there and so violate its contract; that it obstructs the particular part of the passageway selected and improved by him after the making of the contract; that he ought not to be forced, by the building of this concrete abutment, to use another part of the passageway under the bridge, less advantageous and less safe than was the one in existence at the time the contract was made, and the one afterwards accepted and approved by him.

This brings us to a consideration of the contract and the rights acquired under the contract.

It will be noted that a controversy had arisen between the plaintiff and the defendant over his right to have the defendant keep and maintain a free passageway for him, under his contract of June 24, 1899. In that contract, the defendant company agreed that the plaintiff should have a suitable underground crossing for passage, both for stock and for hauling goods, just like the one on the old right of way. That one, the record shows, was a good, safe and proper passage for cattle and for transporting loads. When the plaintiff undertook to enforce this agreement, he was met

with some opposition, and a compromise was entered into by which he consented to surrender his right to the passage provided for in the contract of June 24th, and to accept in lieu thereof $800 and an overgrade crossing at a point west of the bridge. It is not contended that they did not give him the overgrade crossing. We must assume that the company—and the record clearly justifies this assumption—did give him this overgrade crossing. It must be borne in mind that, in this settlement, he surrendered all the affirmative rights he had under the contract of June 24th, by the terms of which he was to have a suitable underground crossing like the one under the old bridge, for stock and hauling. He accepted the overground crossing and a money consideration, with an agreement on the part of the company to allow him to put in a gate on the north side of the right of way, so that his cattle might go back and forth under the bridge, at his own expense and risk. The company did not assume any active duty to him touching this underground crossing. The active duty was involved in the original contract, which he surrendered. They gave to him simply a permission to put in the gate, so that his cattle could pass back and forth. As an incident to this, of course, a right was granted for his cattle to pass back and forth under the bridge. The company assumed no duty to keep this passageway in safe condition for that purpose. This was at his own expense and risk.

In that provision of the contract in which plaintiff is allowed to put a gate on the company's fence, on the north side, so as to let his cattle go back and forth under the bridge, the company assumed no duty to the plaintiff to keep the passageway under the bridge free from obstruction, to the end that it might be so used by the plaintiff. It assumed no affirmative duty to keep the passageway under the bridge in the same condition in which it was at the time the contract was made. At that time, the bridge was in the process of construction. It was afterwards constructed, but on piling.

This piling, as the record shows, became rotten. In the interests of the public service and for its protection, these defendants were forced to replace these pilings with these concrete abutments. The concrete abutments were placed there to make the work permanent. The testimony shows beyond question that the old piling was very rotten; that it rendered the bridge unsafe for public use; that this concrete pier was a public necessity. It was the duty of the defendant, therefore, in the interests of the public, and as a public carrier, to do the thing complained of. The public safety demanded it of the company. There was a continuing duty imposed by law upon the defendant, as a common carrier, to keep its roadbed and bridges safe—a duty for a failure to discharge which the law holds these public service corporations to the strictest accountability. This duty it could not barter away to a private individual. They could not relieve themselves of it by contract. Further than that, they did not attempt to do so in establishing their relationships with the plaintiff. They simply gave to him the privilege of allowing his cattle to pass under this bridge. By the exercise of this privilege, he acquired no rights against the public interests. They made no contract with him to keep the passageway in the condition in which it was at the time the contract was made. By selecting a particular route as a passageway, under permission given to use a passageway, he could not force the company to keep the passageway open, when by so doing it rendered perilous the public service it was called upon to render.

The plaintiff here is not relying on any statutory duties, or seeking to enforce any statutory rights. He has but the permissive right found in the contract. At the time this contract was made, the defendant was the owner of this right of way. This privilege is no part of a reservation made in the conveyance of the right of way. Whatever reservation was made at the time the right of way was acquired was abandoned, and this contract substituted in its stead. For

the reservation in the original contract, he took an over-grade crossing, $800, and this permissive right.   The permissive right is all that is involved in this case.   Plaintiff's case is bottomed on the thought that the defendant owed him some duty not to interfere with the fullest exercise of this permissive right; that the building of this concrete abutment was an interference with the fullest exercise of this permissive right; that, in the building of this concrete abutment, they violated some duty that they owed to him, growing out of the permissive right granted.

He does not ask for any mandatory order, writ or process against the defendant, except as it involves this concrete pier.   The prayer of the petition is that a mandatory writ of injunction issue, compelling defendant to restore said passageway and abate said nuisance, as provided by law.   The nuisance referred to is the concrete pier.

It is plain, therefore, that this relief cannot be had.   The defendant owed the plaintiff no duty not to build this pier at the place where it was built.   It owed an active duty to the public to maintain the bridge in a safe condition for its use as a public carrier.   The record shows that the building of this concrete pier was a necessary thing to be done in the interest of public travel.   The plaintiff would have the court order the company to remove this pier, abate it as a nuisance, order the passageway under the bridge restored to its original condition, because, he says, he has used that particular part of the passageway himself for seven years under the permissive right in his contract.   As the company owed him no duty not to put the concrete pier where it is, the law imposes upon them no duty to remove it.   In no sense is it a nuisance.   In no sense is it an obstruction to the exercise of any contractual right acquired by the plaintiff.

As said in *Hartshorn v. Chicago G. W. R. Co.*, 137 Iowa 324:

"It is no answer to say that the company should have realized all this when making the promise, for the public is

too deeply concerned in the safe operation of the railway and the protection of life and property to tolerate the continuance unnecessarily of a known peril to either. Nor should improper agreements in the interests of private convenience or to avoid outlay of money be allowed to unduly interfere with the public necessities of rapid (safe) transportation. Experience often demonstrates error in plans for the future . . . , and when these are discovered, the door for adequate correction, when the public is so vitally concerned, ought not to be closed.''

See, also, *State v. Burlington, C. R. & N. R. Co.*, 99 Iowa 565; *Schrimper v. Chicago, M. & St. P. R. Co.*, 115 Iowa 35.

Our conclusion is that the plaintiff is not entitled to the relief prayed for, and that the defendant has violated no duty to the plaintiff for which it should respond in damages. The case was rightly decided in the court below, and is— *Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.