JULIUS EHLER, Appellant, v. ADOLPH STIER et al., Appellees.

DECEMBER 13, 1927.

REHEARING DENIED MARCH 10, 1928.

*L. W. Powers,* for appellant.

*Andrew Bell* and *P. J. Klinker,* for appellees.

KINDIG, J.—A statement of· the facts is first important. Near the land sought to be subjected to an alleged easement is the Soldier River, flowing in a southwesterly direction. Julius  Ehler, plaintiff and appellant, and Ludwig H. Johannsen, defendant and appellee, owned farms commencing at a point just north of said stream, and extending for a distance of one-half mile into the higher ground. Between these holdings is a public road, running north and south. Appellant's land is to the east thereof, and appellee Johannsen's to the west. Surface water follows a draw on Johannsen's land in a southerly trend to a point where its course at present is diverted sharply to the east and across the public thoroughfare through a bridge constructed by the appellee township trustees.

In order to accomplish this diversion, a dike or revetment is maintained, preventing the water from going straight south down into the Soldier River. Complaint by appellant is that, in times of freshets or high water, volumes thereof pass through the "bridge" and spread over his land, causing damage, all in violation of a permanent injunction obtained by one John R. Meier, in 1894 (the case of Meier v. Kropf, in the same district court), restraining the officers of that township from: First, maintaining a "bridge" across the common way, and second, constructing "ditches" thereon parallel with the traveled part thereof.

Defense is interposed at this juncture, predicated upon the further history of events. That is to say, in the year 1906, one Anton Christiansen, who had previously obtained the farm from said Meier, filed in the proceeding of Meier v. Kropf, before mentioned, an application for the modification of the "permanent injunction" to the extent that the decree would no further bar said officials from the right to construct a culvert in the middle, and also cut a ditch on the east and west sides of said "highway," which latter were to be of the same size. Without notice served on anyone, the court allowed this prayer.

Immediately thereafter, the then respective owners, Claus Johannsen and Anton Christiansen, orally agreed that the "dikes and revetments" should be placed on the Johannsen premises, the "culvert" installed, and "highway ditches" excavated, to prevent the water from making the "road" impassable and causing injury to the properties of each when it overflowed about twenty rods south of the present location of the "culvert."

Consequently, in 1906, the officers of the township expended the public money in the manner and way suggested, and the drainage scheme agreed upon for the mutual benefit of the parties was, without change, continued, with the exception that, in 1919, the 36-inch corrugated steel "culvert" was removed, and a wooden structure substituted therefor. Christiansen afterwards conveyed the acreage east of the "highway" to grantees, who became the grantors of appellant, and later, Claus Johannsen transferred title of that on the west thereof to Ludwig H. Johannsen, the appellee.

I. If his grantors subjected the particular real estate to a permanent drainage easement above outlined, then appellant re-

ceived it thus burdened; for set forth in his chain of title was the original injunction, together with all the procedure relating thereto, and at all times, including the moment of acquisition, was the adjacent "highway" incumbered by the "culvert" and lateral "ditches" into which flowed the water from Johannsen's field. *Brown v. Honeyfield,* 139 Iowa 414. We said in that case:

"If the right to this way became permanent by reason of the agreement and the conduct of the parties, it created an easement that passed with the grant of the land itself, and it was not necessary to specifically mention the same in the deeds of conveyance."

II. When once established, such "easement" is not a mere license, depending on the will of the owners, but amounts to and is a perpetual right, which cannot be disregarded or set aside, except by the consent of all concerned. *Brown v. Honeyfield,* supra; *Hayes v. Oyen,* 164 Iowa 697; *Schlader v. Strever,* 158 Iowa 61; *Brown v. Armstrong,* 127 Iowa 175; *Vannest v. Fleming,* 79 Iowa 638; *Geneser v. Healy,* 124 Iowa 310; *Loveless v. Ruffcorn,* 143 Iowa 221; *Pascal v. Hynes,* 170 Iowa 121; *Morse v. Rhinehart,* 195 Iowa 419.

III. Remaining, then, is the duty of determining whether or not, under the facts and circumstances in this case, the ancient grantors by agreement produced and instituted a "permanent  easement." On this phase of the controversy, appellant insists that sufficient evidence has not been furnished. He argues that the only proof offered is that of long use, without any showing that there was claim of right thereunder. Section 10175 of the Code of 1924 (and similar sections in previous Codes) provides:

"In all actions hereafter brought, in which title to any easement in real estate shall be claimed by virtue of adverse possession thereof for the period of ten years, the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof; and these provisions shall apply to public as well as private claims."

This legislative enactment has been carefully and closely adhered to in all considerations of the kind involved. For

application of that principle, reference is made to the following cases: *Whitham v. Chicago, B. & Q. R. Co.,* 178 Iowa 1296; *Shimanek v. Chicago, M. & St. P. R. Co.,* 178 Iowa 1187; *Hastings v. Chicago, R. I. & P. R. Co.,* 148 Iowa 390; *McBride v. Bair,* 134 Iowa 661; *Hagerle v. Beebe,* 123 Iowa 620; *Lehfeldt v. Bachmann,* 175 Iowa 202.

IV. But in the case at bar, there is more than proof of usage. Clearly, in addition thereto, ample substantiation is made of the fact that the "possession" was under "claim of right," and that "the party against whom the claim" was "made had express notice thereof." To begin with, Christiansen knew the injunction was permanent, and that it was for his benefit; and the improvement now complained of as a nuisance could not have been installed, except for the "modification" (whether it be by direct court action or through estoppel). Therefore, petition to acquire such was filed. Permanence was one of the elements of the "injunction." Variation desired was not temporary, but as lasting as the original, and so it was decreed.

Final objective of the contracting owners was to cause the water to flow through the "culvert" and in the "lateral ditches," rather than to permit the same to rush unmolested down the swale, and ultimately make travel upon the "highway" impossible, and cause damages to many acres of both owners, because of its spreading over the entire district a short distance south. That contemplated the acquiring of adversary interests by the west title holder in the subservient estate to the east. Knowledge of this was undeniably in the possession of Christiansen at the time. So impressed was it upon his mind that he instituted the supposed proper court proceedings to allow the very subordination of his fee, now complained of by a subsequent grantee.

Even though the court attained no jurisdiction because of the lack of notice, yet the incident reveals the purpose and information of the applicant. Manifestly, the fundamental thought in the minds of each contractor at that time was to arm the holder of the west estate with "a claim of right" to have the water so diverted that it would travel in the way planned by the amended "decree" and verbal "agreement" mutually entered into. Thus the rights and equities continued for a period of almost, if not quite, twenty years,—at least, many more than

ten. Not momentarily, but rather for all time, the easement was granted. Indication of this may be found in the very nature of the supplemental "decree," as well as by reflecting upon the truth that the public was induced to lend its official aid in making a betterment on the "road" upon this basis, and then remembering the investment of private funds for the reciprocal gain of the proprietors, supported by the oral contract.

There is more in the equation than just the lapse of time. All the essential elements named in said Section 10175 are supplied. As a matter of fact, the "easement" was fully and completely "established" by the compact in 1906 between Christiansen and Ludwig H. Johannsen, according to the spoken words, acts of the interested persons, and the surrounding facts and circumstances, and became then an existing actuality, regardless of "adverse possession." Rights and equities of appellant can be no greater than those of Christiansen, and he is bound by the conduct and understandings of his grantors.

V. However, it is said that, even though all the foregoing be true, yet, nevertheless, the action of the district court must be modified because, in any event, the new bridge is not justifiable  under the circumstances: that is to say, the new structure cannot be larger than the former 36-inch "culvert." There is no foundation in the record for this contention. Referring to the so-called "modifying decree," as well as the request therefor, we find no suggestion concerning the size of this public work. Necessarily, then, the evident discretion in this regard was left to the officials in charge.

The judgment and decree of the district court must be, and therefore is, affirmed.—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.