## WILLIAM B. McELROY, admr., *vs.* RODERICK McLEAY.

### May Term, 1899.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, THOMPSON and WATSON, JJ.

Opinion filed July 19, 1899.

*Statement.*—When Batchelder deeded the four-tenement house to the intestate, there. were four water-closets in the same, which discharged into a drain running across the lot on which the house stood; thence across a lot owned by H. A. Phelps; thence across a lot called the Sullivan lot, owned by Batchelder and Phelps in common; and thence connecting with a public sewer on Church street. Soon after Batchelder sold to the intestate, he bought Phelps's interest in the Sullivan lot, and it afterwards came through intermediate conveyance to the defendant. The closets were and are a necessary part of the house; and sewer connection with Church street was and is necessary, and will continue to be as long as the closets remain in the cellar; and at the time of the conveyance to the intestate, said connection was a necessary continuous and an apparent appurtenance to the property.

*V. S. 1237—Witness Incompetent.*—As the effect of Batchelder's deed to the intestate is the thing in dispute, he was incompetent by V. S. 1237 to testify what the intestate was informed and knew when the deed was given, about the character of the right to drain across the Sullivan lot.

*V. S. 1238—Witness Incompetent.*—As the orator is an administrator and Batchelder incompetent, the defendant was also incompetent by V. S. 1238 as to facts and circumstances which took place before the death of the intestate.

*Appurtenances—What Passes as Part of the Grant.*—Without saying whether that part of the drain on the Sullivan lot was legally appurtenant to the property in the hands of Batchelder so as to pass under the *cum pertinentiis* clause in his deed of warranty to the intestate, the case comes within the rule that everything apparent and continuous that is essential to the beneficial use and enjoyment of the property designated in the grant is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing by the grant as far as the grantor had power to grant it.

*Tenants in Common—Estoppel Fed by subsequently acquired Title.*—The rule is not affected by the fact that Batchelder was only half owner of that part of the drain in question, for although a tenant in common cannot by his sole deed convey to a stranger an interest in a part only of the common property, yet as between the parties thereto such a deed is not void, but, if a warranty, is operative as against the grantor by way of estoppel, whether it conveys an interest in the land or not, and in the present case the estoppel is fed by the title which Batchelder afterwards acquired from his co-tenant.

*License—Merger in Fee.*—Even if the drain on the Sullivan lot was constructed under a license, that license became merged in the fee when the licensor conveyed to the licensees, as there was no beneficial interest to be subserved by non-merger.

*Shurtleff and Wife* v. *Hubbard*, Washington county, 1890, unreported, stated and approved.

*Opinion Evidence.*—It will not be taken that evidence upon which a fact is found by the master was opinion evidence, unless it is so shown by the record.

*Appurtenance—Necessity.*—The necessity of the appurtenance is to be determined as of the time of the conveyance without regard to subsequent alterations.

CHANCERY. Heard upon pleadings, master's report and exceptions thereto by both parties, at the March term, 1899, Washington county, before *Thompson*, Chancellor, who, *pro. forma*, overruled the exceptions and dismissed the bill with costs. The orator appealed.

*John W. Gordon* and *Senter & Goddard* for the orator.

*Richard A. Hoar* and *George W. Wing* for the defendant.

ROWELL, J. When Batchelder deeded the four-tenement house to the intestate, there were four water-closets in the cellar, which discharged into a drain running westerly across the lot on which the house stood; thence across a

corner of a lot owned by H. A. Phelps, where a drain connected with it from a three-tenement house on that lot; thence across a lot called the Sullivan lot, owned by Batchelder and Phelps in common; and thence connecting with a public sewer on Church street. Soon after Batchelder sold to the intestate, he bought Phelps's interest in the Sullivan lot, and thus became sole owner of it. He afterwards sold it to Beckley, who sold it to the defendant. Said water-closets were and are a necessary part of the house; and sewer connection with Church street was and is necessary, and will continue to be as long as the water-closets remain in the celler; and at the time of the conveyance to the intestate, said connection was a necessary, continuous, and an apparent appurtenance to the property.

As the effect of Batchelder's deed to the intestate is the thing in dispute, he was incompetent by statute to testify what the intestate was informed and knew when the deed was given, about the character of the right to drain across the Sullivan lot; and as the orator is an administrator and Batchelder incompetent, the defendant was also incompetent by statute as to facts and circumstances that took place before the death of the intestate. The deed, therefore, which is a warranty with a *cum pertinentiis*, without special mention of the drain through the Sullivan lot, must be considered without reference to the finding of what the intestate was informed and knew about the character of the right to drain across that lot; and the question is, whether the deed is to be given any and what effect in respect of that part of the drain.

We do not undertake to say whether that part was legally appurtenant to the property in the hands of Batchelder so that it passed as an appurtenance, as it clearly would if it was legally appurtenant; but we class the case as coming within the rule that everything apparent and continuous that is essential to the beneficial use and enjoyment of the property disignated in the grant, is, in the

absence of language indicating a different intention on the part of the grantor, to be considered as passing by the grant as far as the grantor had power to grant it. Such things pass as a part of the thing granted and by force of the grant itself, without the words, *cum pertinentiis*, or any like words. Thus, by the grant of a messuage or house, the orchard, garden, and curtilage pass; and so an acre or more may pass by the name house. Co. Litt. 5b. If a man grant *omnes boscos suos*, the land itself passes. Co. Litt. 4b. So the grant of a mill carries the use of the water by which it is worked, the flood-gates, dam, and all things necessary for its use, as well as the land on which it stands and that over which it projects. And it may embrace adjoining land, if necessary for its use and actually used therewith. In such case the adjoining land does not pass as appurtenant to, but as parcel of, the principal thing granted. 2 Wash. Real Prop. 2d ed. 663. Indeed, as said by Judge Story in *United States* v. *Appleton*, 1 Sumner 502, "every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for; and whatever are properly incidents and appurtenances of the thing granted will pass by mere operation of law, without the word *appurtenances*." And in this he agrees with Lord Coke, who says that by the grant of a manor without saying *cum pertinentiis*, the villein regardant, advowson appendant, and the like, do pass. Co. Litt. 307a.

In *Toothe* v. *Bryce*, 50 N. J. Eq. 589, it is said that the grantee is entitled to enjoy the thing granted as it was when he bought it, with all its apparent appurtenances, if they look permanent and are useful and add to its value. So in *Pyer* v. *Carter*, 1 H. & N. 916, it is said to be according to reason that when the owner of adjoining houses sells one of them, it should in the hands of the purchaser be entitled to the benefit of all the drains therefrom and subject to all the drains then necessarily used for the enjoyment of the adjoining house, without express reservation or grant,

inasmuch as the purchaser buys it just as it stands; that if this were not so, the inconveniences and nuisances in towns would be very great, for when the owner of several adjoining houses conveys them separately, it would enable the purchaser of any one of them to stop up the system of drainage made for the benefit and convenience of all. Mr. Devlin says it is strictly a question of what passes by the deed; that the law gives a reasonable intendment to the grant in all such cases, and passes with the land all the easements and privileges that belong to it and are used as appurtenances. Devlin on Deeds, sec. 863.

*Coolidge* v. *Hager*, 43 Vt. 9, is a good case on this subject. That was a conveyance of a house and lot without mention of a spring owned by the grantor on the land of another, from which water was then running to said house through an aqueduct that was partly in the land conveyed, partly in other adjoining land of the grantor's, and partly in the land of the other man. No question was made nor could be but that the grant carried all of the aqueduct that was in the land conveyed, and it was held that it carried the water as it was then running, with a right to the spring and the aqueduct sufficient for its continuance, as an appurtenance of the house and the land; and this was based, not on the words, *cum pertinentiis*, but on the rule above stated. Now as to Batchelder's deed, it is clear that it passed the part of the drain that was in the land conveyed. But that part was of no use without the rest. Therefore it is reasonable to suppose, as there is nothing in the deed to the contrary, that Batchelder intended to have it convey, as far as he could make it, enough of the rest of the drain to make that part beneficially useful for the purpose to which it was devoted and for which it was then being used. The only difference between this case and *Coolidge* v. *Hager* lies in the fact that there the defendant was sole owner of the spring, while here Batchelder was only half owner of that part of the drain in question. But that difference is not material on

the construction of the deed, as shown by *Charleston, etc., R. R. Co.* v. *Leech,* 33 So. Car. 175 : 26 Am. St. Rep. 667. There a tenant in common granted a right of way for a railroad over the common property. It was essential to the beneficial use and enjoyment of the right that the undivided interest of the grantor should be severed from that of her co-tenants, that the grantee might know whether any and how much of its road ran over the land of others and how much over the land of the grantor, and this could be ascertained only by a partition, which the grantor had the means of enforcing; and under the rule above stated, inasmuch as partition was essential to the beneficial use of the right of way, it was held to be clear that partition was in the minds of the parties when the grant was made, as there was no language in it indicating a different intention on the part of the grantor, and partition was ordered.

But it is said that the case does not come within the rule stated, because the drain was originally laid through the Sullivan lot by Batchelder, H. A. Phelps and N. D. Phelps, by oral license from Sullivan, when they owned the testator's premises in common, and that the owners of those premises never had any right to maintain the drain through the Sullivan lot except what was conferred by that license, which was revocable at any time on the facts found; but if not, that it certainly spent itself when the drain became worn out, as it has, and that therefore no right to renew it exists. It is further said that if this is not so, inasmuch as Batchelder was only a tenant in common of the Sullivan lot when he deeded to the intestate, he had no power to convey an interest in the drain across that lot by his sole deed, so that an essential element of that rule is wanting, namely, the power to convey, and that therefore the case is not within the rule.

As to the license, that, at its best, merged in the fee when the licensor conveyed to the licensees, as there was no beneficial interest to be subserved by non-merger.

*26*

As to the deed, although a tenant in common cannot by his sole deed convey to a stranger an interest in a part only of the common property, yet, as between the parties thereto, such a deed is not void. It is inoperative as to the co-tenant, because he is entitled on partition to have his purparty assigned in an entire parcel according to his aliquot part, and his co-tenant cannot defeat that right without his consent. But if a warranty, it is operative against the grantor as between the parties thereto by way of estoppel, whether it conveys an interest in the land or not, for, as Lord Mansfield has somewhere said, "no man shall be allowed to dispute his solemn deed." *Varnum* v. *Abbot*, 12 Mass. 474, is a leading case on this subject, and holds precisely that. And such is the doctrine of the cases generally. But we think they go further, especially the more recent ones, and hold that an interest passes as against the grantor, and that for that reason the deed is good as to everybody but the co-tenant and those claiming under him. And this is what is said in *Dall* v. *Brown*, 5 Cush. 289. So in *Gibbs* v. *Swift*, 12 Cush. at page 398, it is said that if the co-tenant takes his share out of other parts of the common property, or is otherwise satisfied, or is not in condition to take the exception, then the purchaser taking from his grantor by metes and bounds will take a title that cannot be disputed. In *Whitton* v. *Whitton*, 38 N. H. 127, 75 Am. Dec. 163, it is said that though the deed is inoperative as far as it impairs the rights of the co-tenant, yet as to him and all others, for all other purposes, it is good, and the grantee is to be regarded as owner. So in *Young* v. *Edwards*, 33 So. Car. 404: 26 Am. St. Rep. 689, it is said that though such a conveyance will not be allowed to operate to the prejudice of the co-tenant, yet when it can be given effect without such prejudice, there is no reason why it should not be sustained, and that such is the weight of authority. Mr. Freeman thinks that such a deed conveys an interest as between the parties. Cotenancy and Partition, 2d ed. § 206.

But if this were not so, it would make no difference in this case, for when Batchelder bought out his co-tenant, and thus became the sole owner of the Sullivan lot, that interest, when it accrued, fed the estoppel, and what before was an estate by estoppel only, became an estate in interest, and of the same quality as though Batchelder had been sole owner when he gave the deed. And although the defendant be regarded as a *bona-fide* purchaser without notice, it would make no difference, for when an estoppel works on the interest, it runs with the land into the hands of whomsoever it comes, and this, notwithstanding our registry system. *Jarvis* v. *Aikens*, 25 Vt. 635, is full authority on this point. In *Cunningham* v. *Pattee*, 99 Mass., at page 251, it is said that "if the title of the co-tenant entitled to disaffirm the conveyance becomes vested in the one by whom it was executed, the newly acquired title of the grantor will inure by estoppel to the benefit of the grantee." Mr. Freeman says that all the authorities on the subject seem to be to the same effect; sec. 207. But this is too much to say, for although the great weight of authority is that way, yet cases are not wanting that deny the doctrine. And Mr. Bigelow, Mr. Rawle, and the American editors of Smith's Lead. Cases, treat the subject fully and at large, and also deny the doctrine, and with very cogent reasoning. But that has been the law of this State for fifty years, if not always; and as it is a rule of property, we should not feel at liberty to depart from it, even though we thought it unsound.

*Shurtleff and wife* v. *Hubbard*, in Washington county, decided by this court in 1890, but not reported, is relied upon by the orator. There one Keith, being owner in severalty of the orators' premises, took water thereto for the beneficial use of the house and barn, by means of a branch pipe attached to a main aqueduct leading from springs on other land whereof, and of said aqueduct, he owned a part as tenant in common. The title of the

premises afterwards passed from him by the foreclosure of a mortgage that he gave thereon after the water was thus put in, and came to the orators from the mortgagee. After the execution of the mortgage and before its foreclosure, the defendant became the owner of an undivided half of said springs and aqueduct, which half included Keith's share; and after the orators bought, he became owner of the other half, and then disturbed them in the use of the water, whereupon they brought a bill to restrain him, which was sustained. The case fell to the late Chief Judge Royce, who wrote no opinion, and none of the other judges who sat in the case recall the ground on which it was put; but the decision was manifestly right, as Keith's mortgage, which contained full covenants, was good against him by way of estoppel, even though no interest in the water passed thereby, and all the more good against him if an interest therein did pass, and good against the defendant in either case, especially as the record does not show that he claimed to stand as a *bona-fide* purchaser without notice.

As the finding that at the time of the conveyance to the intestate the sewer connection with Church street was a necessary, continuous, and an apparent appurtenance is based partly on the testimony of H. A. Phelps, it is objected that his testimony was not admissible, for that it consisted merely of his opinion that such was the fact. But as the record does not show that such was his testimony, the objection is not considered.

It is further objected that sewer connection with Church street was not necessary, as it is found that connection could have been made with the sewer on Park street at an expense inside the house of about seventy-five dollars. But, as said in *Pyer* v. *Carter*, above cited, it is the necessity at the time of the conveyance, and as things then were, without alteration, that is to govern.

*Reversed and remanded, with mandate.*