JOHN T. GENESER, Appellee, v. MARTIN HEALY, Appellant.

**Drainage:** SURFACE WATER: INJURY TO ADJOINING OWNER: EVIDENCE.
1　One has no right to increase the natural flow of surface water to the injury of an adjoining owner, by constructing artificial channels, or by directing thereto water which would have naturally found another outlet. Evidence considered and held to show a violation of this rule.

**Estoppel:** CONSENT TO CHANGE OF WATER COURSE. One, without objec-
2　tion, permitting a highway grade to be established and to remain for twelve years, changing the natural flow of surface water from his land, must be held to have consented thereto and is not justified in opening the grade to the injury of another.

**Drainage ditches:** LIMITATION OF ACTIONS. The statute of limitations
3　will not commence to run against an action for damages, at the date of the construction of a drainage ditch, which is not permanent in character.

**Same.** The fact that an action for defendant's wrongful act in divert-
4　ing the natural flow of surface water into the highway, by means of ditches on his own land is barred, will not defeat plaintiff's recovery for injury caused by cutting a ditch through the highway grade, and turning the water onto plaintiff's land.

*Appeal from Dallas District Court.*— HON. JAMES D. GAMBLE, Judge.

·THURSDAY, JUNE 9, 1904.

ACTION in equity to enjoin the defendant from maintaining certain ditches, and for the recovery of damages. Decree for plaintiff, and defendant appeals.—*Affirmed.*

*Dale & Harvison,* for appellant.

*White & Clark,* for appellee.

WEAVER, J.—The plaintiff is the owner of the west half and the southeast quarter of section 3, in township 80, range 26, in Dallas county, Iowa, and defendant is the owner of a part of the east half of section 10, situate immediately south of the land of plaintiff. An understanding of the respective locations of these lands and of the matters herein- after stated will be materially assisted by reference to the accompanying plat, exhibited in evidence by the defendant:

Much of the southeast quarter of section 3, belonging to plaintiff, and the north half of the northeast quarter of sec- tion 10, belonging to the defendant, is comparatively low and flat bottom land, having a slight slope to the east and north in the direction of Beaver creek. In its natural condition,

and especially in very wet seasons, water collecting on the defendant's land would slowly find its way eastward and northward to the creek.   While the testimony is not entirely harmonious, we think the weight of it tends to the conclusion that the flowage of water was by a general spreading over the bottom land, rather than by concentration in any well-defined water course, until such condition was changed by the construction of ditches.   At some time prior to the period covered by this controversy, and before the defendant purchased the land now owned by him, ditches had been dug from the points indicated by the letters A and B on the plat in the west half of section 10 to the junction at C, near the southwest corner of the north half of the northeast quarter of said section.   The natural and inevitable result of these ditches was to collect and discharge upon the last described tract an increased quantity of water.   At the time of defendant's purchase of this land the water brought down the ditches above mentioned had cut a channel or course from the point of junction C, northeasterly to the point D, from which place the flow had a tendency to spread to the east across the bottom.   Defendant then dug a ditch from D still further to the northeast to E, and dug out and straightened what he claims to have been a natural crooked channel from that point to the north line of his land.   The earth and sand obtained by these excavations was deposited on the east side of the ditches thus made or repaired, with the result that the channel or waterway thus provided carried to the boundary between the lands of the parties materially more water than would naturally have found its way there.   If it be not correct that more water was thus brought to and discharged upon the plaintiff's land, it is at least very clear that the water which naturally would have spread over the bottom and upon the land of plaintiff and defendant in a broad and comparatively thin sheet, was collected and discharged in a different manner, and with different results, than would have followed had natural processes not been interfered with.

Something more than ten years prior to the beginning of this suit a public road which had been established upon the line between these sections was filled by an embankment extending a considerable distance to the east of the point where defendant's ditch brought the water from the south to his north line at G. To avoid the barrier created by this embankment and afford an escape for the water, a ditch was constructed either by the road supervisor or by the parties interested along the south side of the roadway to a bayou connecting with Beaver creek. This ditch appears to have afforded a reasonably satisfactory outlet for the water coming or spreading from the defendant's land until a short time before the commencement of this action, when defendant cut a culvert or ditch across the road at G, and let the water through the opening thus afforded upon plaintiff's land. It is the claim of plaintiff, and the evidence tends to support it, that by reason of this act of the defendant several acres of his land have not only been overflowed with water, but have been so covered with sand and mud thereby deposited as to seriously depreciate their usefulness and value for farming purposes.

The controversy, as will be seen, is almost exclusively one of fact, and the foregoing statement indicates our view 1. SURFACE of the general tendency of the testimony. But WATER: injury to adjoining for the construction of the ditches in section 10 owner; evidence. and the conduct of the defendant in opening the ditch from C to G and in building up an embankment along the east side of such channel, it is morally certain that very much of the water thus sent in the direction of the plaintiff's land would have spread to the eastward over defendant's own premises. The plaintiff has no right to complain of water which naturally comes upon his land along the natural slopes and channels existing on the lands of the defendant, but it is not the right of the latter to increase that flow, to the injury of plaintiff, by constructing artificial channels, or by directing thereto water which would naturally

have found another outlet. The defendant, as a witness, says: " I had a ditch cut from D to E to keep it from spreading over my land east of the knoll (L). * * * I dug the ditch to keep it from spreading and to carry it across my land. * * * To prevent the water moving down over the east part of my 80, I had the ditch dug from D to E. * * * I threw the dirt on both sides, but I think the most of it on the east side, to form an embankment to keep the water to some extent from running over my land." Naturally he states the case in the most favorable light for himself, and from his own standpoint; but his statement, when carefully considered in the light of all the circumstances disclosed by other witnesses, leads clearly to the conclusion which we have indicated.

There is still another feature of the case which negatives the right of the defendant to cut the ditch across the road and flood the plaintiff's land. Even if we assume that orig-

2. ESTOPPEL: consent to change of water course.

inally there was, as defendant claims, a ditch or water course extending north across the road at G, curving back to the south side of the line at I, the right to have the water follow the said channel around the curve was one which plaintiff could waive, or surrender, or lose by abandonment, as is the case with all other property rights. At least twelve years before the commencement of this litigation, according to defendant's testimony, this highway was graded and filled along the line between sections 3 and 10, and by means of the ditch already mentioned along the south side of the grade the water was carried to the east. So far as appears, the defendant made no objection to this provision for the escape of the water, and no demand to have the grade removed or opened for a period of more than ten years. It appears that at one time before the grading was done a culvert existed across the road, allowing the water to pass from the land of defendant to that of plaintiff. The location of that culvert is not clearly established, defendant claiming it to have been at or near the place where he has cut

the grade, while plaintiff claims it was a considerable distance to the west. Its exact location is not a matter of importance. John Downey, a witness for defendant, says: "This whole bottom land here overflows from the Beaver. The ditch from the culvert east was dug for the purpose of getting dirt to make the grade. When that ditch was dug, there was no necessity for the culvert any longer, and it was abandoned, because the water run down the public highway, and the place where the water used to run across the road was abandoned." If prior to that time the water did follow a channel or way curving from defendant's land at G a short distance into plaintiff's land at H, and back again to defendant's premises at I, it is manifest that by shortening said course by a ditch on the south side of the grade from G to I a sharper fall and more rapid flow were obtained than existed before, and the change thus effected in the course could not have operated to obstruct the escape of water from defendant's land. It is quite possible that the retreat of the water after a widespread overflow may be somewhat delayed by the highway grade along the line between the lands of these parties, but, if so, it is not an effect for which the plaintiff is responsible, and would not justify the defendant in opening a ditch through the grade, and casting upon plaintiff's land the concentrated flood, which, in the absence of the grade or other interference with the flow, would have spread across the line in a broad sheet, carrying little, if any, sand or debris. The defendant having, without objection, permitted the grade to be built and the culvert to be filled, and having allowed that condition to be maintained so many years, we think he must be held to have consented thereto, and that he cannot now be justified in cutting a ditch or opening across the grade to the plaintiff's injury. That an injury did result to the plaintiff is clearly shown.

There is the usual dispute as to the extent of the damage, but the estimate of $300 placed upon it by the trial court is fully sustained by the testimony.

Appellant urges that, if his act in opening the ditch from D to E, and thence to G, on his own premises, had the effect to increase the flow of water in the direction of plaintiff's land, then, such act having been done more than five years before, the commencement of this suit, plaintiff's right of action, if any, is barred by the statute of limitations. To this there are at least two sufficient answers: First. A ditch such as was made by the defendant, in which there is no permanent or constant flow of water, and the course of which may readily be diverted by other ditches, or, when left without repair or cleaning, naturally tends to fill up and disappear, is not such a permanent structure that all the recoverable damages to plaintiff necessarily accrue at the date of its construction, and the statute of limitations is therefore not necessarily set in motion from that date. *Costello v. Pomeroy,* 120 Iowa, 213; *Pettit v., Grand Junction,* 119 Iowa, 352.

3. DRAINAGE DITCHES: limitation of actions.

Second. The act of the defendant in constructing the ditch on his own land had no necessary tendency to injure the plaintiff's land so long as the latter was protected by the grade of the highway. When, however, he cut across the grade, and precipitated the water upon the plaintiff's premises, he could not excuse the wrongful act by saying that by a former wrongful act, against which the statute of limitations had run, he had brought about the accumulation of water of which he was trying to rid his own premises. It is not the act of the defendant in bringing the water to the road of which the plaintiff is complaining, but of his act in opening the ditch across the road, and letting the flood escape in that direction. The act which is the gist of the plaintiff's complaint was done but a short time before this suit was commenced, and the right of action based thereon is not barred by the statute, nor has there been any laches in asserting that right of which defendant can justly complain.

4. SAME.

The decree of the district court is right, and is AFFIRMED.