CARRIE SCHLADER, et al., Appellees, v. GEORGE R. STREVER, Appellant.

**Drainage of surface water:** EASEMENT: EVIDENCE: ESTOPPEL. Where one landowner constructed a drain through the land of another in

pursuance of an agreement and in reliance thereon as affording an outlet for his surface water, and incurred expense in constructing the same and making his connection therewith, the grantees of the servient estate are bound thereby, and are estopped to obstruct the drain or deprive the owner of its beneficial use. The evidence in this action is held to show an agreement of defendants grantor with plaintiffs ancestor for the construction of the drain over the land of defendant.

Same: NATURAL DRAINAGE: OBSTRUCTION. A landowner may drain 2 the surface water along a natural waterway, and an adjoining owner cannot rightfully obstruct the flow and turn the water back upon his land.

Same: INCREASED FLOW. Where a landowner has acquired an outlet 3 for the drainage of his surface water through the land of another, he may by extending the lines of tile drain the low wet places in his land into the same, in accordance with the usages of good husbandry; not however diverting the water naturally tributary to another course of drainage in quantities injurious to the servient estate.

Same: RIGHT TO DRAIN OVER OTHER LAND: DAMAGES. Under the stat- 4 ute a landowner may lawfully drain his land into a natural water course, or depression on his own land which leads into a natural watercourse, without liability in damages to anyone; and where the natural drainage is not wholly upon his own land, but is carried to adjoining land in accordance with an agreement with the owner, the same immunity from damages exists.

*Appeal from Wright District Court.*—HON. CHAS. E. ALBROOK, Judge.

FRIDAY, DECEMBER 13, 1912.

THE opinion states the nature of the case and the material facts.—*Affirmed.*

*D. C. Chase* and *W. J. Covil,* for appellant.

*Sylvester Flynn,* for appellees.

WEAVER, J.—The plaintiffs are the heirs of George Schlader, deceased, from whom they derived title to the N. W.

¼ of section 16, township 90, range 25 in Wright county, Iowa. The deceased obtained his title in the year 1890. A swale or natural course of drainage crosses this land from the northwest to the southeast, and extends for a considerable distance upon the east half of said section, and discharges into what is known as the White Fox creek. At the time in question the land was owned by one Walter Good, through whom title thereto is traced to the defendant in this action. Prior to 1894 an open ditch had been constructed along the course of the swale across both tracts of land affording both some degree of drainage. In 1894 or 1895 Schlader laid a twelve-inch tile drain along the course of the open ditch across his land, and under an agreement with Good, to which a reference will later be made, he extended the same a distance of sixty rods along the same open ditch in the direction of the creek. Having laid the tile, he filled the excavation upon his own land, but left that part on the land of Good unfilled. A year or two later Good took up that portion of the uncovered tile which had become broken, replaced them with new tile, cleaned out those which had become more or less obstructed, and refilled the ditch. He also extended said tile drain from the point where it was left by Schlader to the creek, or at least entirely across his own land. Both Schlader and Good and his grantees constructed laterals on their respective premises discharging into the main tile. The system thus provided afforded sufficient drainage, so that both tracts of land have to a considerable extent been cultivated and used for ordinary farming purposes in and along the course of the swale, though it is claimed by the defendant that the twelve-inch tile is insufficient to carry off all the water in wet seasons, and that his crops are thereby at times injured or destroyed. The drainage system constructed, as stated, seems to have been used by both parties without controversy or objection on either side until after defendant herein purchased the east half of the section in the year 1909. He made the purchase, knowing the existence of the drain, and required his grantor to covenant or contract

against the legal right in any other person to any easement or interest of that nature. In the year 1910 defendant closed or obstructed the main tile near the point of its entrance from the plaintiff's land, and, when such obstruction was removed, he renewed it. Thereupon this action was begun to enjoin further interference with or obstruction of said drainage, and for the recovery of damages. It is the claim of plaintiffs that they have a legal right under the statutes and laws of this state to the unobstructed flow of drainage from their land along the said ditch as a natural water way. They also claim that said tile drain was constructed under an oral agreement with Good, the defendant's grantor, whereby a perpetual license or easement was created for the construction and maintenance of said drain for the benefit of the land now owned by them. The defendants deny the existence of any such right, and deny that any agreement was ever made between Good and Schlader, whereby the latter obtained anything more than a mere temporary license to maintain such drain. They also allege that plaintiff has brought to such drain surface waters from outside the natural watershed, thereby unduly increasing the burden upon the servient estate. The trial court found for the plaintiff, and granted the relief prayed. The defendant appeals.

· Concerning the agreement under which Schlader extended his tile sixty rods down the swale upon the land of Good, there is some conflict of evidence, but, upon careful examination, it is apparent that the dispute relates to incidental matters, and not to the real essence of the contract. It is not denied that, when Schlader undertook the drainage of his land, he sought his adjoining owner Good, or rather Good's brother and agent in possession of the land, and that the latter reported the same to the owner. The negotiations according to defendant's own showing resulted in an agreement that Schlader should be allowed to extend the drain along the open

1. DRAINAGE OF SURFACE WATER: easement: evidence: estoppel.

ditch for a distance of sixty rods upon Good's land, and that Good should pay for such improvement or contribute thereto to the extent of $100, the tile, so laid upon the premises of the latter, to thereafter belong to him. Plaintiff's evidence tends to show a similar agreement except as to where the ownership of the tile in the drain on Good's land should rest. Defendant's evidence further tends to show that while Schlader dug the ditch, and laid the tile on the land of Good for the distance contemplated, he did not cover or fill the excavation. Good complained of this omission, and objected to making the payment of $100, and the parties compromised upon the sum of $25, which was thereupon paid to Schlader. Good then or later took up and cleaned a part of the tile, renewed the broken ones, and filled the excavation, leaving the drainage from Schlader's land through such tile unobstructed. It is true Good as a witness now swears that he never agreed to give Schlader any right to an outlet for drainage upon his land, and that the sum and substance was that he employed and paid Schlader to construct this sixty rods of drain for the benefit of his (Good's) land.

This statement evidently lacks candor, or the witness is confused as to the very manifest meaning of his own words. There is no pretense or shadow of evidence in the record that Schlader sought the job of making this drain as a mere employe or contractor without respect to its effect upon his own land. Or the contrary, it is perfectly clear that in these negotiations he was seeking to secure or improve an outlet for his drain. Good himself on cross-examination says: ''The first I knew of Schlader constructing a drain through the N. W. 1/4 of section 16 was when my brother wrote me about it eleven or twelve years ago. In his letter he told me that Schlader was either tiling or had tiled his land, and wanted to come over and get an outlet upon my land. . . . I never knew of anything that my brother said to me that Schlader wanted to do anything further for me than to place the tile on my land

and get an outlet for himself.'' It was unquestionably for this purpose and for this purpose alone that Schlader sought the arrangement permitting him to construct this drain, and it is incredible that the parties thereto did not both know and understand that he was thereby to acquire the right to use said drain as an outlet. If he, in fact, did not complete the work in the manner contemplated, that failure on his part was condoned, and the damage resulting therefrom was paid in the settlement by which Good was relieved from his payment of a part of his promised contribution to the expense. That such was the understanding of the parties was shown by the fact that, after Good had repaired such drain, he restored the connection with plaintiff's tile, and it continued to do service as an outlet for plaintiff's drainage for twelve years or more without any objection or complaint from Good or his grantees. The fact, if it be a fact, that it was understood that the tile laid upon Good's land should become his property, is in no manner inconsistent with plaintiff's claim that Schlader had Good's agreement to afford him an outlet for his drain.

That agreement having been acted upon, and Schlader having adjusted his drainage system in reliance upon such outlet and incurred the expense of constructing the same and making connection therewith, defendant cannot rightfully obstruct such outlet, or deprive the plaintiffs of the beneficial use thereof. *Vannest v. Fleming,* 79 Iowa, 638; *Neuhring v. Schmidt,* 130 Iowa, 401; *Brown v. Honeyfield,* 139 Iowa, 414; *Hansen v. Creamery Co.,* 106 Iowa, 167.

Moreover, the drainage in question is along a natural waterway, and defendant cannot rightfully obstruct the flow and set the water back upon the land of the

2. SAME : natural drainage : obstruction.

plaintiffs. The open ditch in which the tile was laid had existed from some more remote date, and afforded an outlet or means of escape for the drainage of both farms. Defendant has both filled this ditch and stopped the tile, thereby wholly preventing the flow from the dominant estate, except as the obstructed waters may arise

and overspread the surface. There is no sound theory of law on which such action can be justified.

It is claimed, however, that by means of their lateral ditches plaintiffs have diverted to the main tile waters not naturally flowing in that direction to an amount which lessens the effectiveness of defendant's drainage of his premises. There is some testimony of this character, but we think it fails to show any material or wrongful increase of the burden upon defendant's lands. It may be true that within the watershed served by the drain in controversy there were some low spots of restricted area in which surface waters would stand at times, and only the over-flow and seepage be discharged into the swale, and that by extending the lines of tile through these wet places they were drained to the bottom, and converted into arable land, but we think this is not only in accordance with the usages of good husbandry, but is well within the right of the dominant owner. That any material amount of surface water naturally tribu-tary to some other line or course of drainage has been diverted to the outlet here in dispute is not in our judgment shown by the record. Whether the statute hereinafter cited has any effect to abrogate or modify the unwritten law in this respect we shall not here attempt to decide. None of the cases cited by appellant require any other conclusion than we have already indicated. Both statute and case law on the subject of drainage of rural lands in this state are to a considerable extent the product of a comparatively recent evolution the completion or perfection of which is probably not yet in sight. The distinct tendency on the part of both Legislature and courts has been and still is toward an enactment and inter-pretation of law, which, while depriving no person of essen-tial or valuable rights, shall not allow any reasonable effort for reclamation, improvement, and development of agricultural lands to be thwarted because of objections which are at best technical and unsubstantial.

Among the evidence of this tendency prominence is to be

3. SAME: in-creased flow.

given the recent statute, Code Supp. section 1989-a53, which

4. SAME: right to drain over other land.

provides that owners of land may drain the same by the construction of open or covered drains discharging the same into any natural water course or into any natural depression whereby the water will be carried into some natural water course, and, when such drainage is wholly upon the owner's land, he shall not be liable in damages to any person. It follows, of course, that where such drainage is not wholly upon the owner's land, but is carried into or discharged upon the land of an adjoining owner with the agreement of the latter, a like immunity from liability for damages must also exist. The statute has served to relieve the situation from the hampering effect of a too literal reading and application of certain abstract statements of law contained in the discussion of precedents and principles found in *Livingston v. McDonald,* 21 Iowa 160, and some other cases in which that decision has been followed and approved. · The statutory right of the plaintiffs to collect the surface waters upon their premises into a single ditch discharging into a natural water course or depression leading into such a water course is thereby assured and this being supplemented by the acquired right to extend the outlet along such course into the land of the defendant the court will protect him in its use and prohibit its obstruction by the defendant. The decree of the district court is right, and it must be approved.

A motion has been filed by appellant to tax appellees with the cost of printing the amended abstract in this case. The ·amendment contains· fifty-two pages of printed matter, and exceeds in volume the original abstract. We think it much more voluminous than necessary to a proper presentation of the record and the cost of such printing in excess of fifteen pages will be taxed to the appellees. All other costs will be taxed to the appellant.—*Affirmed.*