DAVID M. MCKEON et al., Appellants, v. GEORGE BRAMMER et al., Appellees.

No. 47031.

NOVEMBER 11, 1947.

Kelleher & Kelleher, of Fort Dodge, for appellants.

White & Bruner, of Carroll, and Brammer, Brody, Charlton & Parker, of Des Moines, for appellees.

MULRONEY, J.—David, Merrill, and Winifred McKeon are the owners of a farm in Carroll county. Defendant George Brammer owns the adjoining farm on the north. Plaintiffs brought action to enjoin the continuance of an obstruction to an underground tile line which extended from the McKeon land to and across Brammer's land. The petition alleged the tile line was originally constructed, more than twenty years before,

by agreement of the then owners of the two farms and the persons who actually obstructed the tile line were defendants I. G. Chrystal and Jake Bell. The latter is a tenant of Brammer, and he was the tenant of former owners of the Brammer farm and Chrystal is the owner of the land east of Brammer. Plaintiffs also sought damages for loss of drowned-out crops.

The answers filed by defendants admitted that an underground tile line was constructed between the farms as alleged and that in 1934 Chrystal and Bell blocked the line by putting a metal dam across the line close to the south border of the Brammer farm. They asserted the act of blocking said line was not wrongful or improper and it violated no rights of plaintiffs because the tile line on the Brammer farm was constructed as a part of Drainage District No. 9-13 and plaintiffs' land was not in said district while the Brammer and Chrystal farms were in said district. They alleged the facilities of the drainage district were already overtaxed and if land outside the district was permitted the use of the district tile drains the efficiency of the district system would be further impaired and the land of Brammer and Chrystal would suffer damages because of the increased burden. The answers denied that the tile line was constructed under an agreement between the former owners but alleged that even if there were an agreement it was subsequent to the establishment of the drainage district and the then owner of the Brammer farm would have had no right, power, or authority to authorize or permit the owner of plaintiffs' farm to use the facilities of the drainage district. The answers denied that any easement had been obtained and the defendant Brammer in his separate answer alleged that he purchased his farm in 1941, "seven years after said dam was placed in said tile drain, without notice or knowledge that James McKeon [plaintiffs' uncle and former owner of the farm] ever had connected his private drainage system with said tile drain of District No. 9-13 or that plaintiffs claimed the right to use the facilities of said district maintained by it on said land."

After hearing testimony the trial court in effect found that an easement had been obtained in favor of plaintiffs but that Brammer purchased his farm in good faith without notice of the easement and he therefore held his land free from the ease-

ment and the court concluded he was without power to mandatorily command the removal of the obstruction on Brammer's land and he therefore denied a mandatory injunction against the continuance of the obstruction in the tile line. The court did grant an injunction against Chrystal and Bell as to future acts. The plaintiffs appeal and Chrystal and Bell perfected a cross-appeal.

I. The defendants admitted in their answers that the McKeon farm is somewhat higher than the Brammer farm and that there was drainage of some surface water from the McKeon farm to the Brammer farm. But there was some evidence of a low spot just inside the north boundary of the McKeon farm that was somewhat lower than the land at the boundary line so that in wet seasons a pond would form at this place if the water was not carried off in the tile line. It is clear from the evidence that James McKeon, plaintiffs' predecessor, and George Holliday, Brammer's predecessor, constructed a connecting tile line between the two farms, probably about thirty years ago. Holliday's son testified that his father gave James McKeon permission to connect his tile line and that he was present in his father's office when there was a "gentlemen's agreement" between his father and James McKeon entered into whereby his father gave McKeon the privilege of attaching his tile. He stated that he did not recall what was said exactly but from what was said, he understood that it was to be permanent. A workman who dug part of this ditch stated it was constructed about thirty years ago and he testified:

"I dug first at a point four rods north of the fence. Mr. McKeon and Holliday both were there when we started, and I was there and Zenner was there. That was all. McKeon and Holliday were talking together. I don't know who pointed out the place to start. Somebody else than me picked the place. * * * I couldn't say how near the four of us were together. That has been so long ago. * * * I did dig across the road [between the two farms] and dug to the south, probably ninety rods altogether. * * * We crossed one low spot just inside of the fence; inside of the McKeon fence on the south side, south of the north line of the McKeon forty. This low spot was prob-

ably an acre. The three lateral branches were in that low spot. \* \* \* We followed the lowest part of the ground as we proceeded. \* \* \* the depth from the beginning to end of the ditch was about three feet six \* \* \* down to the bottom of the tile. \* \* \* The tile that was dug and laid there had a fall. The water would run. I saw it run. It run away from us. It run north. That was the lay of the land. The land sloped north. \* \* \* There was a kind of a low spot down through there, swale, low.''

■ Defendants argue that the most the record shows is that McKeon obtained nothing more than a parol license to use the tile line on their land, which was revocable at the instance of Holliday or any of his grantors. The trial court held the testimony sufficient to establish an easement in favor of plaintiffs. We agree with his conclusion. See Morse v. Rhinehart, 195 Iowa 419, 192 N. W. 142, and Pascal v. Hynes, 170 Iowa 121, 125, 152 N. W. 26, 27. In the latter case we held:

''The tile drain constructed by Martin Hynes in 1893 carried the water from the pond north of the road into the swale on plaintiffs' land. The drain was laid with the then owner's consent and the surface water carried through it from defendant's land, as well as part of plaintiffs', with the acquiescence of the latter, the then owner under whom they claim, until 1904, more than ten years, by reason of which defendant has acquired a prescription right to the use of the drain in plaintiffs' land. Hatton v. Cale, 152 Iowa 485; Dorr v. Simmerson, 127 Iowa 551; Vannest v. Fleming, 79 Iowa 638.''

■ II. Defendants' main propositions of error are based on an argument that Holliday had no right to give McKeon permission to connect his tile line with that of the public drainage district; that James McKeon had in fact remonstrated against the inclusion of his land in the district; that the facilities of the district are already overtaxed; and that to allow McKeon to maintain drainage by this tile line is to permit the owners of the McKeon farm to drain their land into the district without paying their proportionate share of benefits by way of assessment. The trial court pointed out that the maps and plats of

the drainage district show that the tile lines constructed by the district are 40 rods north of the south border of the Brammer farm so there was no direct connection with the McKeon tile line to the drainage district tile line, and he held in effect that, even though the tile line brought water from a farm outside the district and finally outlet into a public drain on Brammer's land, the agreement was lawful for the tile line was constructed in the natural course of drainage and the fact that the water from the McKeon farm came through a tile did not appear to add any substantial burden to the district above what natural drainage imposed. He drew support for his finding from Cowley v. Reynolds, 178 Iowa 701, 160 N. W. 241; Johannsen v. Otto, 225 Iowa 976, 282 N. W. 334; and section 465.22, Code, 1946. The cited cases hold that when water is moved from the dominant land to the servient land by nature or by a tile line in the natural course of drainage, the water becomes the water of the servient owner and the function of the drainage district on the servient land is to drain away the water in the district that arrives in the district by nature or in any legal manner. The trial court in his findings stated:

"It does not seem that the rights of adjoining landowners who own dominant lands to have their waters drain by nature onto the servient lands are cut off by the formation of a drainage district which includes only the servient lands. Neither does it appear that the individual drainage rights provided by the code section above referred to, under which adjoining owners may drain their lands in the course of natural drainage in open or covered drains, are in any way affected by the establishment and construction of a drainage district improvement which includes only the servient lands."

We agree with the trial court's reasoning and conclusion.

III. Most of plaintiffs' propositions of error are directed to the trial court's finding that Brammer purchased the land without notice or knowledge of the drain or of plaintiffs' claimed right of easement and he therefore took the land unaffected by the easement. The trial court cited the general rule announced in 17 Am. Jur., Easements, section 128, to the

effect that "* * * a bona fide purchaser of land without knowledge or actual or constructive notice of the existence of an easement in such land takes title free from the burden of the easement." There was no constructive notice in the sense that any instrument was filed in the recorder's office showing the easement and we can assume, from the record, that Brammer did not have actual knowledge of the existence of a tile line between the two farms at the time he purchased the farm.

The trial court holds, and we think rightfully under the evidence, that an easement existed in favor of the McKeon farm. This easement was gained by prescription before Brammer bought the farm. It was gained during the twelve or thirteen years after the tile line was constructed when the Hollidays, who knew of the existence of the tile line, owned the farm.

Of course, after the ten-year period when the easement by prescription was obtained, it would be perfectly enforceable against the original owner of the servient estate if he were still the owner. Can it be that this owner, who would be estopped to deny the easement, is still able to sell his land to a purchaser without actual or constructive notice and the easement appurtenant to the other land and gained by prescription is thereby extinguished? We·have found no case expressly so holding. There are in general three ways of creating an easement (1) an express written grant (2) by prescription, and (3) by implication. Some writers combine the last two, calling all easements created without grant easements by implication on the theory that the court implies a grant or acts on a fiction of a lost grant when use for the period of limitations is established. But as a general rule an implied easement is restricted to the servitude that exists when the owner of two parcels employs one so as to create a servitude on the other and later transfers one parcel without specific grant or reservation of the easement in the conveyance.

While there are different methods of creating easements, the easements created do not differ. For instance, "an easement acquired by prescription stands in all respects on the same footing as an easement acquired by grant." 28 C. J. S., Easements, section 22. And an easement by implication is the implication

of a grant or reservation of the easement in connection with a conveyance by the grantor who owned the dominant and servient estates. An easement created by express written grant is, if recorded, operative against subsequent purchasers for value without notice. 28 C. J. S., Easements, section 24; 17 Am. Jur., Easements, section 132; Willoughby v. Lawrence, 116 Ill. 11, 4 N. E. 356, 56 Am. Rep. 758; section 558.41, Code, 1946. But when the easement is not based upon any written instrument such as an easement by prescription or implication, it would seem the recording acts should have no application. It is the law that a purchaser of the servient estate will be charged with notice of all apparent easements and the purchaser is bound where a reasonably careful inspection of the premises would disclose the existence of the easement. 28 C. J. S., Easements, section 49; 17 Am. Jur., Easements, section 130. But what will we say as to an easement that is created by implication or prescription, and hence not subject to recordation, and is of such nature that it cannot be seen or is not apparent from any marks on the servient land? Will the bona fide purchaser for value of the servient estate without actual notice take title free from the servitude? Will such a transfer work an extinguishment of the easement? If so, then the acquisition of such an easement, by prescription or by implication, the character of which is not apparent, is of little value. In such a situation there are two innocent parties. On the one hand we have the innocent purchaser, in the sense that he purchased the servient estate without notice of an easement that was not apparent. On the other hand we have the owner of the dominant estate in full possession of an easement that is not apparent, which he has gained by prescription or one which the law will imply upon a severance. He has no instrument to record that will give constructive notice to prospective purchasers of the servient estate. It is difficult to see how plaintiffs or their grantor in this case could give actual notice to anyone. Of course they were under no duty to give George Holliday notice. He was there when the tile line was constructed. R. D. Holliday, who bought out his co-owners and finally held the full title at the time the prescriptive period expired, testified in the case for the plaintiff to the effect that

he knew all about the tile line. The McKeons were under no duty to notify R. D. Holliday's prospective grantee that they held this easement.

Actually an easement, created by implication or prescription, is based on the principle of estoppel. 17 Am. Jur., Easements, section 33. In McElroy v. McLeay, 71 Vt. 396, 403, 45 A. 898, 900, a case of implied easement, involving the right to maintain a drain pipe across the servient land to connect with a sewer, where the deed was silent as to the right to maintain the drain, the court stated that Batchelder, the original owner of the two parcels would be estopped to deny that his conveyance did not include a right to maintain the drain, even though at the time of the conveyance of the dominant estate he was only a co-owner of the property, since he later bought the interest of his co-owner. The holding was that the easement acquired was good as against the subsequent purchaser of the servient estate, presumably without notice, the court stating:

"* * * when Batchelder bought out his co-tenant, and thus became the sole owner of the Sullivan lot [servient estate], that interest, when it accrued, fed the estoppel, and what before was an estate by estoppel only, became an estate in interest, and of the same quality as though Batchelder had been sole owner when he gave the deed. And although the defendant be regarded as a bona-fide purchaser without notice, it would make no difference, for when an estoppel works on the interest, it runs with the land into the hands of whomsoever it comes, and this, notwithstanding our registry system."

When we trace the rule that the bona fide purchaser of a servient tenement without actual or constructive knowledge of an easement is only affected by an easement that is apparent, we find it began life in situations involving implied easements and where during unity of title an apparent servitude was imposed on one part of the estate in favor of another, which at the time of severance was actually in use. 2 Tiffany on Real Property, Second Ed., 1281, note 5, points out that the suggestion of the necessity of apparency of pre-existing quasi easements appears to have been adopted from the French Civil Code where

it was applied in the doctrine of implied grant based on previous usage. Apparency of the easement or servitude as the test for its creation by implication, upon a transfer is understandable. But it does not follow that the same test of apparency should govern its extinguishment upon subsequent transfers. Even in the cases where the rule has been applied to determine whether or not an implied easement arose, the words "apparent" and "visible" have not been considered synonymous. See 58 A. L. R. 832 and 835, where the author of the note lists a number of authorities and draws therefrom the following rules:

"While there is some conflict of authority as to whether existing drains, pipes, and sewers may be properly characterized as apparent, within the rule as to apparent or visible easements, the majority of the cases which have considered the question have taken the view that appearance and visibility are not synonymous, and that the fact that the pipe, sewer, or drain may be hidden underground does not negative its character as an apparent condition; at least, where the appliances connected with and leading to it are obvious.

"The principles above discussed have been specifically applied so as to uphold the implication of an easement in respect of underground drains and sewers existing at the time of the severance of the tract."

Whatever be the test with respect to apparency of the servitude when the question to be decided is whether there was an easement or not, it is clear that no such test should be applied when the existence of the easement is admitted or established and the question is whether it will be extinguished if not apparent to a purchaser of the servient estate. There has been some confusion in the application of the rule that the easement must be apparent in order to affect the purchaser of the servient estate. Cases can be found where the rule has seemingly been applied to purchasers of the servient estate burdened with an established easement, though in most cases the courts have gone to great lengths to uphold the easement by strained definitions for the word "apparent."

The easement we are discussing is an easement appurtenant.

"An easement is an interest which one person has in the land of another. Its most important characteristic is that its burdens fall upon the possessor of the land with respect to which it constitutes an interest regardless of the circumstances under which it was created or under which he entered into possession. This characteristic is expressed in the statement that the land in which an easement exists constitutes a servient tenement. Since an interest consists of one or more legal relations, and legal relations exist only between persons, such a statement must be deemed metaphorical. It does, however, emphasize the fact that the subjection of a possessor of land to an easement in his land is based upon his possession rather than upon his participation in the creation of the easement or his succession in interest to another who, in the first instance, created it." Restatement of the Law, Property, section 450.

"Because the identity of the possessor of land is not material in determining his liability to an easement, a language technique has developed in which the land itself is described as owing the service to which the owner of the easement is entitled and as being itself subject to the easement. Such a description is, of course, figurative. It is, nevertheless, helpful as a reminder of the close association of the burden with the possession, and in emphasizing that the burden rests upon the possessor. This burden is not a normal incident of possession because it is not found to exist without proof of a separate creation. Yet, when proved to have been created, it rests upon the possessor of the land subject to it as possessor and so becomes incidental to his possession." Restatement of the Law, Property, section 455.

In Larsen v. Peterson, 53 N. J. Eq. 88, 30 A. 1094, Stuyvesant v. Early, 33 Misc. 644, 68 N. Y. Supp. 903, Miller v. Skaggs, 79 W. Va. 645, 91 S. E. 536, Ann. Cas. 1918D, 929, and Berlin v. Robbins, 180 Wash. 176, 38 P. 2d 1047, the courts held that once an easement by implication in underground pipes had been established at the time of the severance of the dominant and servient estates by the owner of both, the easement is good as against the subsequent purchaser of the servient estate. In

these cases there was no particular discussion as to whether the purchaser of the servient estate was a bona fide purchaser without notice. But also the courts do not base the purchaser's liability to the servitude on the basis that the easement was visible at the time of his purchase. To the same effect see Logan v. Stogdale, 123 Ind. 372, 24 N. E. 135, 8 L. R. A. 58, and Zimmerman v. Cockey, 118 Md. 491, 84 A. 743, involving right-of-way easements. Two cases involving easements in drain pipes where the courts specifically held an established easement was good, as against a bona fide purchaser of the servient estate without actual or constructive notice of the existence of the easement at the time of purchase, are McElroy v. McLeay, supra, and Wiesel v. Smira, 49 R. I. 246, 253, 142 A. 148, 151, 58 A. L. R. 818. The latter case is particularly in point and the opinion illustrates the two situations: (1) When the test of apparency is applicable in determining whether or not an implied easement did in fact exist and (2) when the test of apparency is not applicable when, after an easement is established, the servient land is sold. After first holding the easement in the drain pipe was established as being apparent within the meaning of that word as defined in numerous authorities, the opinion states:

"Complainants, however, urge that, even if an easement existed by implied grant, a conveyance by the former common owner of the servient tenement retained by him destroyed the easement and we are referred to [9] Ruling Case Law, Easements, §61 [now 17 Am. Jur., Easements, section 128]; 19 C. J. 940. It is true that the bona fide purchaser of land without actual or constructive notice of existence of an easement may take the land relieved of its burden. When this occurs it is because the dominant tenant has failed to do something which he ought to have done. In the case at bar to whom could the dominant tenant give notice and when? Notice to the grantor was unnecessary because he himself laid the pipe. It can scarcely be contended that Coppen [owner of the dominant estate] was under a duty to know when the original owner was negotiating for or making a sale of the servient tenement nor had he a duty to follow up mesne conveyances with notices

of the easement to the purchasers. Smira's [another dominant estate owner] situation was similar. Both Coppen and Smira had a legally established interest in the land which could not be taken away without their knowledge or some failure of duty on their part. No cases support complainant's contention in this respect. Those cited by him relate either to unrecorded grants where record was required, parol licenses or cases where the easement was held not to be apparent. Once conceding the existence of an easement by severance of the quasi dominant and quasi servient tenements, we see no way by which the owner of the latter can convey it even to an innocent purchaser freed from said easement without the knowledge or approval of the owner of the dominant tenement. Rights in real property cannot be thus divested."

Much of the foregoing opinion was quoted in Berlin v. Robbins, supra, but the holding in that case was that the easement in the underground pipe was good as against the purchaser of the servient estate on the ground that knowledge of its existence would be imputed to the purchaser since the facts were of common knowledge and known to all persons in the vicinity of the land.

We are convinced the reasoning of Wiesel v. Smira, supra, is sound. An easement appurtenant is an incorporeal right that does not carry title to the servient land and the possessor of the servient land is not dispossessed of his land by reason of the servitude. It is not considered a lien against the servient land. 28 C. J. S., Easements, section 1 and section 73. To hold otherwise would mean that obtaining an easement appurtenant by implication or prescription would not be permanent if the nature of the easement was such that it could not be seen upon the premises. All authorities hold that easements by implication and prescription can be gained in underground pipes and tile lines. They cannot be extinguished by a sale of the estate burdened therewith to one who has no notice of their existence at the time of purchase. The property right in the easement is in the owner of the dominant estate. Section 4.1(8), Code, 1946. The grantor of the servient estate has no more right to convey the estate free from a nonapparent easement than he

has to convey free from an apparent easement. In either instance he fails to convey a property right that he does not own —one that has passed to the owner of the dominant estate and runs with that land. The purchaser of the servient estate takes no greater title than his grantor had. Until the easements so created are in some manner brought within recording acts, as they are in some states, the owner of the dominant estate and consequently the owner of the easement is not in default or in any manner estopped from asserting his easement right as against any owner of the servient estate. There is a clear distinction between the rule of law that requires apparency of an unrecorded easement for its creation and the rule with respect to the extinction of an established easement. As said in Haselden v. Schein, 167 S. C. 534, 540, 166 S. E. 634, 636:

"The rule of the law that an easement may be extinguished by the conveyance of the servient estate without notice to the purchaser, of the easement, carries with it the idea that there has been an intentional concealment or deception which imposed upon the purchaser."

Defendants state in their brief that they have not found any decision of this court which expressly holds that a bona fide purchaser of land without knowledge or actual or constructive notice of the existence of an easement takes title free from the burden of the easement. Defendants cite Mosle v. Kuhlman, 40 Iowa 108, Peterson v. Pierson, 89 Iowa 104, 56 N. W. 290, and Dickinson v. Crowell, 120 Iowa 254, 94 N. W. 495, as indicating cases where the rule has been adopted by implication. These are cases where the record title showed an easement or the marks of servitude were visible and we held the purchaser had notice. Brown v. Honeyfield, 139 Iowa 414, 116 N. W. 731, Hatton v. Cale, 152 Iowa 485, 132 N. W. 1101, Ehler v. Stier, 205 Iowa 678, 216 N. W. 637, Hayes v. Oyer, 164 Iowa 697, 146 N. W. 857, and Morse v. Rhinehart, 195 Iowa 419, 192 N. W. 142, are also cases where we held the easement good as against subsequent purchasers of the servient estate on the finding that such purchaser did have notice, by reason of visible marks of servitude, of the existence of the easement. But there

are expressions in some of the cases indicating that the easement would be good even if the purchaser of the servient estate did not have notice. For instance in Brown v. Honeyfield, supra, while the opinion holds the purchaser had knowledge of an easement in an open ditch that was partly filled up, it is also stated at page 418 of 139 Iowa, page 732 of 116 N. W.:

"The appellees [dominant owners] have done nothing, nor have they omitted to do anything upon which an estoppel can be based."

In Ehler v. Stier, supra, there were some ancient court proceedings involving a drainage easement, and these proceedings would show in the chain of title to the servient estate. It does not clearly appear that the opinion is based on the notice a purchaser of the servient estate would receive by reason of these proceedings. The opinion does state at page 681 of 205 Iowa, page 638 of 216 N. W.:

"When once established, such 'easement' is not a mere license, depending on the will of the owners, but amounts to and is a perpetual right, which cannot be disregarded or set aside, except by the consent of all concerned. Brown v. Honeyfield, supra; Hayes v. Oyer, 164 Iowa 697; Schlader v. Strever, 158 Iowa 61; Brown v. Armstrong, 127 Iowa 175; Vannest v. Fleming, 79 Iowa 638; Geneser v. Healy, 124 Iowa 310; Loveless v. Ruffcorn, 143 Iowa 221; Pascal v. Hynes, 170 Iowa 121; Morse v. Rhinehart, 195 Iowa 419."

In Hayes v. Oyer, supra, it is stated at page 702 of 164 Iowa, page 858 of 146 N. W.:

"* * * when the owners of both the dominant and servient estates join in a scheme of drainage which was continued for more than the period of the statute of limitations, this scheme becomes perpetual, and could not be changed without the consent of the owners of the land."

In Morse v. Rhinehart, supra, the opinion holds the purchaser of the servient estate had notice of the tile line from the dominant estate immediately after he entered into a contract to purchase the farm and before he had paid any substantial

part of the purchase price and he was therefore not an innocent purchaser without notice and then follows this statement at page 421 of 195 Iowa, page 143 of 192 N. W.:

"Furthermore, the right of appellant [owner of dominant estate] was one running with the land. Dorr v. Simmerson, 127 Iowa 551; Hansen v. Farmers Co-op. Creamery Co., 106 Iowa 168; Robinson v. Luther, 140 Iowa 723, 725; Ruthven v. Farmers Co-op. Creamery Co., 140 Iowa 570."

In Kane v. Templin, 158 Iowa 24, 28, 138 N. W. 901, 902, it is stated:

"Easements appurtenant pass with the description of the property to which they are appurtenant without specific designation, and, on the other hand, the purchaser of the servient property takes subject to the easement without express reservation. Teachout v. Capital Lodge, 128 Iowa 380; Reed v. Gasser, 130 Iowa 87; Hatton v. Cale, 152 Iowa 485; Stephens v. Boyd, 157 Iowa 570, 138 N. W. 389."

The exact question of the extinguishment of an existing easement, which by its very nature is not visible or apparent, by the sale of the servient estate to a bona fide purchaser without knowledge or actual or constructive notice, appears to be one of first impression in this state. It is our holding that such an easement is not terminated by such a sale and the purchaser takes subject to the easement.

■ IV. The evidence in this case establishes that the drainage was along a natural watercourse. In Vannest v. Fleming, 79 Iowa 638, 642, 44 N. W. 906, 908, 8 L. R. A. 277, 18 Am. St. Rep. 387, it is held: "* * * there is no difference between underground water, collected by tiling, and surface water."

In Hayes v. Oyer, supra, we held a ditch dug and maintained on the servient land "became a watercourse" which the subsequent owner of the servient land was not at liberty to disturb. In Nixon v. Welch, 238 Iowa 34, 24 N. W. 2d 476, we held an artificial channel can become a natural watercourse after the period of prescription has run. Chapter 465, Code, 1946, is entitled "Individual Drainage Rights" and the statutes

in the chapter provide in effect that where the owner of property, desiring to construct a levee, ditch, or a tile line across the land of another in order to secure better drainage, cannot agree with the other owner upon the terms for such construction, a procedure can be followed whereby the township trustees will locate the levee, ditch or tile line. The statutes allow treble damages for any person obstructing such a tile line so established. The statutes seem to contemplate agreements for the establishment of such tile lines between farms and it would seem that one established by agreement would have the same status as one established by the trustees. In any event, section 465.22 in said chapter provides that owners of land "may drain the same in the general course of natural drainage by constructing open or covered drains, discharging the same in any natural watercourse or depression whereby the water will be carried into some other natural watercourse, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor."

Under the evidence and the authority of the above statute plaintiffs were entitled to have the dam removed from the tile line. Schlader v. Strever, 158 Iowa 61, 138 N. W. 1105. The trial court held the tile line did not result in any substantial increase in the flow of water over what would naturally flow from the McKeon farm to the lower Brammer farm. We agree with his finding. In Board of Supervisors v. Board, 214 Iowa 655, 672, 241 N. W. 14, 22, many decisions of this court are reviewed and the above statute is considered and the rule announced is:

"Therefore it seems that the rule under the statute now is that the upper proprietor may drain his land through natural watercourses in a way to increase the water that is to flow over the servient land, providing the increase is not too great or in such unnatural quantities 'as to be the cause of substantial injury.' "

V. With respect to plaintiffs' claim for damages, the trial court held:

"Plaintiffs ask damages against the defendants. The most they could recover would be damages against defendants Chrystal and Bell. There is no showing that the defendant Brammer had anything to do with the obstruction of the tile drain. The evidence of damage is not satisfactory. The court cannot find any reasonable showing that the plaintiffs were damaged, or how much they were damaged, by the obstruction in question. They complain of damage by drowning of crops in certain years. It is proper to take judicial notice of the fact that these years were years of unusual rainfall. There is no showing whether the obstruction of the drain added much or little to the flooding which the plaintiffs say they sustained. In addition, the estimate of damage is, according to the plaintiffs themselves, a mere guess. The court is of the opinion that the evidence on amount of damage applies an improper measure of damages and is unsatisfactory. No damages are allowed to the plaintiffs."

Without reviewing the testimony, we agree with the trial court's finding with respect to the claim for damages.

It is our holding that the learned trial court erred in concluding that he could not mandatorily command Chrystal and Bell to remove the obstruction they had placed in the tile line on Brammer's farm. The cause is reversed upon plaintiffs' appeal and remanded for a decree in harmony with this opinion. —Reversed and remanded on plaintiffs' appeal; affirmed on defendants' appeal.

OLIVER, C. J., and BLISS, HALE, GARFIELD, SMITH, MANTZ, and HAYS, JJ., concur.