The Des Moines & Fort Dodge Railway Company v. E. A. Lynd, Appellant.

**Estoppel.** In 1870 defendant induced plaintiff's grantor, a railway company, to abandon a certain depot and build another on defendant's land. On a plat of a town filed by defendant in 1871, the disputed ground was marked as belonging to plaintiff's grantor; the plat showed that the disposition of the land made therein was made with defendant's consent and by his desire. Plaintiff acquired the railroad property in 1874, as defendant knew. Defendant repeatedly admitted plaintiff's ownership of the land, and knew that it paid taxes thereon and constructed side-tracks, stock yards, and sidewalks upon it, and treated the land as its own; and certain buildings erected by defendant thereon were always assessed as personalty, and sometimes returned as such by him. *Held*, that defendant was estopped to assert title in the land.

*Appeal from Webster District Court.*—Hon. N. B. Hyatt, Judge.

Saturday, April 6, 1895.

Action in equity to quiet title to certain real estate claimed by the plaintiff as depot grounds. Decree as prayed. Defendant appeals.—*Affirmed.*

*R. M. Wright* for appellant.

  *George E. McCaughan* (*Thomas S. Wright*, of counsel) for appellee.

Kinne, J.—I.   This action involves the title to and ownership of a tract of ground situated in the town of Gowrie, Webster county, Iowa, and which is claimed by plaintiff as being a part of its station or depot grounds.   The defendant claims to be the absolute owner of the land.   About 1870, or prior thereto, the Des Moines Valley Railroad Company constructed a line of railway from the city of Des Moines, through the town of Gowrie, to Ft. Dodge.   Afterward, and about 1874, such proceedings were had in the circuit court of Polk county, Iowa, as, that this road was ordered sold to certain trustees, who in 1875 conveyed the same to plaintiff.   Thereafter plaintiff leased said railway and all property belonging to it to the Chicago, Rock Island & Pacific Railway Company, which has since operated the same.   As originally built, a station had been located about two miles south of Gowrie on this line of road, and a side track had been put in at that point.   By some arrangement between the then owner of said road and the defendant, not clearly shown by the evidence, the railroad company was induced to, or at least did, abandon the idea of maintaining a station where they had already built their side track, and located their depot, station, and side tracks in the town of Gowrie, at the place they now are. Of said depot grounds as finally located, a strip one hundred feet wide and one thousand two hundred feet long has been secured by condemnation proceedings. This strip of ground extended from the center of the main track fifty feet in width on each side of said track.   The particular tracts in dispute are:

*First.* A strip of ground fifty feet wide and one thousand two hundred feet long, lying on the west side of and adjacent to the tract condemned; *second,* a strip of ground one hundred feet wide and one thousand two hundred feet long, on the east side of and adjacent to said condemned tract. The plaintiff claims title by deed by dedication, by adverse possession, and by estoppel. Defendant takes issue upon all of plaintiff's claims, and denies that he ever executed any conveyance of the land to plaintiff. Plaintiff claims that, by itself and its lessee, it has for eighteen years been in actual undisputed possession of said land under title and claim of right, and that, prior to the time plaintiff acquired title to the property, said then owner, the Des Moines Valley Railroad Company, held title and possession. It is not disputed that plaintiff has, during all of the time it has been the owner of said railway, paid taxes on the land in controversy, and erected and maintained sidewalks over and across the same, though defendant claims it was right for it to do so in consideration of the use it had of the property. It is also undisputed that in 1870 the defendant, claiming title to these tracts and to other lands, did cause to be laid out and platted the town of Gowrie, and in said plat and the accompanying declaration designated therein the ground now in controversy as being the station and depot grounds of the railway company. Plaintiff claims that a deed to this property was in fact made to the railway company, but no evidence was introduced showing that such a deed was ever actually made and delivered to the railway company. One witness testifies that he was intrusted with ascertaining as to what real property the plaintiff had title to by virtue of its purchase, and he found that they had title to this disputed ground, and that his knowledge was obtained from deeds placed in his possession, but

he has no recollection of in fact seeing a deed to this property. It appears: That about one-half of one of plaintiff's side tracks rests upon the land in dispute for a distance of some four hundred feet in length. That it was so built originally. That its stock yards are also on the disputed ground, and were placed there at a time when defendant was the agent of the railroad company, and that he pointed out the place where they should be and were located. That defendant was the mayor of the town at a time when a sidewalk was ordered to be built by the council across said ground, and plaintiff was notified to and did build it. That defendant continued to be a resident of the town for most of the time after plaintiff acquired the ownership of the railway. Plaintiff, from time to time, leased to various parties the privilege of erecting coal, grain, and other buildings on said premises, and otherwise exercised acts of ownership over this land. That defendant erected one or two buildings upon the land, and leased some of the ground to other parties for various purposes. Defendant many times admitted that these tracts belonged to the railway company, and at other times claimed that title was in himself. The buildings defendant placed upon this ground were always assessed as personal property, and sometimes, at least, so returned by him. Though there is much conflict in the evidence as to whether plaintiff had knowledge that the defendant made a claim of title to the lands in controversy, we incline to the opinion that it had no such notice until four or five years prior to the bringing of this action. It seems that, for some of the years, defendant was interested in business with a man who was carrying on the business in his own name upon this disputed ground, and was operating under a lease from the railroad company. It does not appear, however, that defendant knew such fact at the

time his partner took the lease. Defendant knew that his buildings situated upon the land were being assessed as personal property, and also that the plaintiff was being assessed with and paying the taxes upon the land itself. Many other facts appear in this record which we need not now recite. The defendant, by cross bill, sought to have the title quieted in him. The court entered a decree for plaintiff, from which this appeal is prosecuted.

II. Counsel have filed learned and exhaustive arguments wherein a large number of authorities are cited, in support of their several contentions. In our view of the case, we need only consider the question of estoppel. If the facts disclosed by this record are such as that, in equity and good conscience, the defendant should not now be heard to assert a claim to the land in controversy, then this decree should be permitted to stand. On considering all of the evidence, we are satisfied that some inducement was offered plaintiff's predecessor which was the moving cause of its relocating its depot site and side tracks. Certain it is that the depot site was changed, and the side track finally laid where it now is. When plaintiff came into possession of this property, in April, 1874, there appeared upon the public records of Webster county a plat and dedication of certain property as constituting the town of Gowrie. This was made at the instance and under the direction of defendant. It was executed and filed in 1871. Attached to the plat is the following: "The grounds of the D. V. R. R. Co. extend from the center of the main track west 100 feet, and east 150 feet, and from the south line of the town plat 1200 feet north." This embraces all the ground now in dispute. The owners, the defendant and his wife, say in their dedication attached to this plat that the disposition of the land described "as shown by the above map (plat) is

with their free consent, and in accordance with our desire." It is difficult to conceive of any act of defendant which would show more clearly his renunciation of any claim of title to this property. Defendant knew when the title to the railroad property changed, and when plaintiff became the owner thereof. He must have known that, after it acquired possession of the property, the plaintiff enlarged its station facilities by reconstructing its stock yards, and extending its sidings, in the belief that it was the owner of this disputed ground. He repeatedly admitted ownership of the property by the plaintiff. He knew that they always returned this property for taxation, and that they paid the taxes thereon. The buildings he had caused to be placed thereon he knew were assessed as personalty, and in some cases he so returned them for assessment. He also knew that the plaintiff built, or paid for building, sidewalks over and across this disputed ground, and he insisted that they should do so. He knew, or was bound to know, that a portion of their side track, for a distance of several hundred feet, rested upon this ground. He had actual knowledge that most of the stock yards of plaintiff were also situated thereon. Indeed, he pointed out and designated the very place where the stock yards were to be and in fact were built. These and other acts of the defendant seem to us entirely inconsistent with his present claim of title to said property. We think from this record it cannot be doubted that in the erection of its depot, and in the extension of its tracks, and in the rebuilding of its stock yards, and in other respects, the plaintiff was acting in good faith upon its supposed ownership of this ground, and that the facts and circumstances were such as that defendant must have had knowledge thereof. Furthermore, his solemn statement is attached to the plat that this ground belonged to the company, and his

knowledge that they were paying taxes on it as their property and other like acts, are entirely consistent with the thought that he made no claim to it, and are, under the circumstances, absolutely inconsistent with his present claims. Nor does defendant in his testimony, as it seems to us, show any good reason why his acts done long before this litigation arose should not be construed to mean just what they appeared to mean at the time they were done. We cannot review further the testimony, nor can we enter into a discussion of the multitude of authorities cited. From the equities of the case, as they appear to us, defendant should now be concluded from claiming title to this land.—*Affirmed.*