ATKINSON

*v.*

SMITH *et al.*

(*Supreme Court of Appeals of Virginia, April 16, 1896.*)

[24 S. E. Rep. 901.]

### Ejectment*—Lost Will—Proof of Contents.

Where plaintiffs in ejectment claim title through one of several heirs of the original owner, to whom such owner devised it to the exclusion of the other heirs, and the will has been lost, evidence of a witness who has examined the records of the courts where the will would probably be recorded that such records do not contain any record of the will is admissible to account for the nonproduction of the will or a copy.

### Same—Same—Same.

Where plaintiffs in ejectment deraign title through a son of the original owner, deeds to such son from his brothers, conveying to him any interest which they would have inherited had their father died intestate, and reciting that, under the will of their father, he was entitled to the land, are admissible in evidence in the absence of the will.

### Adverse Possession—Color of Title.

Adverse possession, to be effectual, must be maintained under a claim or color of title.

### Same—Presumption as to Continuance of.

There is no presumption that adverse possession, once proved, continues till the contrary appears; but its continuance for the statutory period under a claim or color of title must be proved.

---

*See monographic note on "Ejectment," Va. Rep. Anno.; monographic note on "Instructions" appended to Womack *v.* Circle, 29 Gratt. 192 (Va. Rep. Anno.); foot-note to Ward *v.* Churn, 18 Gratt. 801 (Va. Rep. Anno.).

**Instructions—Erroneous—Case at Bar.**

Requested instructions sufficiently covered by instructions already given are properly refused.

**Same—Ejectment—Title of Plaintiff.**

Where defendants in ejectment claim title by adverse possession, it is error to refuse an instruction for defendant that plaintiffs can recover only on the strength of their own title.

**Same—Reversible Error to Give—Case at Bar.**

It is reversible error to give an instruction which assumes that a mesne grantor of plaintiffs had the legal title from the common grantor and authorizes the jury to find for plaintiffs if they have acquired the title of such mesne grantor, without tracing the title to its original service, unless defendant has shown title by adverse possession.

Error to hustings court of Manchester.

Ejectment by Edward H. Smith and others against Samuel D. Atkinson. From a judgment for plaintiffs, defendant brings error. Reversed.

*D. L. Pulliam,* for plaintiff in error.

*W. H. Mercer* and *W. I. Clopton,* for defendants in error.

RIELY, J., delivered the opinion of the court.

No ground was assigned in support of the demurrer. No defect in the declaration was pointed out. It is in the usual form and sufficient. The demurrer was properly overruled. Nor did the court err in admitting the testimony of Maj. Nash. The plaintiffs claimed the land through Robert Michaels, and he claimed it through his father, Philip Michaels, who left, besides his son Robert, two other sons, Albert and James, as his only children and heirs at law. The deeds from Albert and James to Robert, conveying to him any interest in the property which they would have inherited if their father had died intestate, became necessary evidence in support of the plaintiffs' title. These deeds recited that Robert Michaels was entitled to

the land under the will of his father, which at least made it proper, if not necessary, to introduce the will as evidence, or explain the failure to do so. It was proved by James M. Perdue that Philip Michaels moved from Manchester to Henrico county, where he afterwards lived. In order to account for the failure to produce the alleged will of Philip Michaels, Maj. Nash was introduced, and simply testified that he had carefully examined the records of the clerk's office of the county court of Chesterfield, and of the chancery, hustings, and circuit courts of the city of Richmond, and of the county court of Henrico,—the records of the circuit court having been destroyed by fire in April, 1865,—and that he could not find any will of Philip Michaels recorded in either of the said courts. It is difficult to perceive upon what ground the admission of his testimony could be considered erroneous. The defendant also excepted to the introduction as evidence of the deeds from Albert and James Michaels to Robert Michaels, above referred to. They constituted relevant and material links in the chain of the plaintiffs' title, in the absence of any will of Philip Michaels devising the property to his son Robert, and the exclusion of them would clearly have been erroneous.

On the trial the defendant asked the court to give nine separate instructions to the jury, all of which the court refused, and in lieu thereof gave five instructions of its own. Instructions Nos. 3 and 6, which were asked for by the defendant, were plainly erroneous, and properly refused by the court. No. 3 enunciated the doctrine that simple adverse possession by the defendant of the land in controversy for the period of 15 years barred the right of all persons to recover it from him, without requiring that such possession should be under either a claim or color of title, or defining its nature, or how it should be evidenced. It was plainly contrary to law. No. 6 was objectionable in several particulars. It is sufficient to note that the latter part of it announces that adverse possession, when once proved, is presumed to continue until the contrary appears.

Adverse possession is not a matter open to presumption, but its continuance for the statutory period under a claim or color of title is required to be proved.   All of the other instructions asked for by the defendant, except 1 and 2, were fully covered by those of the court, and in language free from ambiguity and more pertinent to the evidence than in the form in which some of them were asked for by the defendant.   Instructions 1 and 2, as asked for by the defendant, were as follows: "(1) The court instructs the jury that the plaintiffs' right to recover depends upon the strength of their title, not upon the weakness of the defendant's title, or the exhibition of defects in the defendant's title, and that the defendant may maintain his defense by the failure of the plaintiffs to show that a better title is in them than is in the defendant, or by the defendant showing the title is not in the plaintiffs, but in some one else. (2) The court instructs the jury that the possession of land by a party claiming it as his own in fee is prima facie evidence of his ownership and seisin of the land, and that it is incumbent upon the plaintiffs in an action of ejectment to prove and show in them a good, perfect, and sufficient title to the land to enable them to recover from the defendant."   These instructions declare the burden that the law places upon every plaintiff in ejectment, except in certain special cases, to which class this case does not belong, and were directly applicable to the case, and had been asked for by the defendant; and, as the court, in its instruction No. 1, defines what it is necessary for a defendant to establish who claims title by adverse possession, it would have been proper for the court under such circumstances to give instructions 1 and 2 asked for by the defendant.   Besides, the instructions being pertinent and proper, the refusal to give them was calculated to mislead the jury.   A defendant in possession of land, when sued in ejectment, stands upon his possession ; and the law requires nothing at his hands in defense until the plaintiff has made out a prima facie title and shown a present right under it to recover the land.

Instruction 5, given by the court, was in these words : "The court instructs the jury that if they believe, from the evidence, that James Neeson purchased the lot in question from D. K. Weisiger, on the 1st day of January, 1872, and took a deed for the same, which was duly admitted to record on the 5th day of January, 1872, and that the plaintiffs in the declaration named are the heirs at law of James Neeson, they must find for the plaintiffs, unless they shall be satisfied, from the evidence, that S. D. Atkinson, the defendant in this suit, under a claim or color of title, has had actual, open, visible, continuous, exclusive, notorious, and uninterrupted possession of the said lot for a period of fifteen consecutive years at some time previous to the institution of the suit." This instruction assumes as a starting point that D. K. Weisiger had the legal title to the land in controversy, and only required the jury to believe, from the evidence, that he had sold and conveyed it to James Neeson, and that the plaintiffs were the heirs at law of Neeson to entitle them to recover the land, and that, if the jury so believed, then the right of the plaintiffs to recover could only be defeated by adverse possession by the defendant for the statutory period under a claim or color of title. It wholly omits to require the jury to believe, from the evidence, that D. K. Weisiger and those through whom he claimed were the legal owners of the land. It fails to require that the evidence should disclose a claim of title running back from the plaintiffs through those under whom they claim to the original source of title, or to a common source of title of the plaintiffs and the defendant, or even that the plaintiffs or those through whom they claim had held possession of the land under a claim or color of title for 15 years. Every requirement of the plaintiffs under the instruction might be shown by the evidence, and yet without any title in them to the land or the right to recover it being shown. Still, if the jury simply believed that the evidence established what the instruction specified, they were directed to find a verdict for the plaintiffs, unless the defendant had held

the land by adversary possession as defined by the court. This court has frequently held that, although an instruction was erroneous, yet, if it can be plainly seen that the defeated party was or could not have been prejudiced by it, it will not reverse a judgment because of such error; but the nature of the instruction in this case, so shown to be erroneous, and the character of the evidence, render it impossible for us to say that the plaintiff in error was not prejudiced by it.

It being necessary, therefore, for such error, to reverse the judgment of the hustings court, it is unnecessary to consider the refusal of the court to set aside the verdict on the ground that it was contrary to the law and evidence, and award the defendant a new trial, as any comment on the evidence, in the view of the trial rendered necessary by our conclusion, would manifestly be improper. Nor is it necessary to notice the other bills of exception, as they relate to matters connected with the last trial, and are such as are not likely to occur upon a subsequent trial. For the error of the court in giving instruction No. 5, its judgment must be reversed, the verdict of the jury set aside, and a new trial awarded the plaintiffs in error.