FRANK H. SHIMANEK, Appellee, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

RAILROADS: Right of Way—Mode of Acquiring—Parol Gift.
1   Whether there can be an effective parol gift—the equivalent of a common-law dedication—to a railway corporation of a railway right of way, *quære;* but evidence reviewed, and held not sufficiently clear, definite and satisfactory to establish such gift.

ADVERSE POSSESSION: Nature and Requisites—Claim of Right
.2    —Notice of Claim—Use as Evidence—Railway Easement.  .Two
all-essential elements of title by adverse possession are: (a) claim
of adverse right, and (b) express notice thereof.  Naked *use* of
the premises is not competent to prove either, especially where the
original use was permissive, and entirely in harmony with a non-
permanent easement.  (Sec. 3004, Code, 1897.)  So held as to the
use of a railway right of way.

ADVERSE POSSESSION: Nature and Requisites—Easement—Pos-
3    session—Presumption.  Possession for more than 20 years of a
railway switch right of way, originally granted as a mere license
or permission, raises no presumption that such possession was
under a claim of adverse right.  (Sec. 3004, Code, 1897.)

ESTOPPEL: Equitable Estoppel—Estoppel Available to Non-Com-
4    plainant—Effect.  Defendant, having no sustainable right him-
self, may not ride to victory over an estoppel borrowed from one
who is neither a party to the suit nor complaining.  So held where
defendant railway company, having no sustainable defense to an
action to quiet title to a railway switch right of way, pleaded
that certain other noncomplaining shippers would suffer if it was
deprived of title.

*Appeal from Jones District Court.*—F. O. ELLISON, Judge.

SATURDAY, SEPTEMBER 23, 1916.

REHEARING DENIED, SATURDAY, JANUARY 13, 1917.

ACTION in equity to establish in plaintiff the title to a
strip of land now and for many years past occupied by de-
fendant as a railway sidetrack or service track, extending
from its main line on the Davenport division some 2,250 feet
north, and to a plant once occupied by the Diamond Cream-
ery Company.  Decree for plaintiff.  Defendant appeals.—
*Affirmed.*

*B. E. Rhinehart* and *Cook, Hughes, Sutherland & Tay-
lor,* for appellant.

*Remley & Remley,* for appellee.

SALINGER, J.—I.  The plaintiff alleges, and it is admitted, that he owns a tract of land in Jones County, upon and through which runs and is operated a right of way of defendant.  It is undisputed that the strip used for the right of way was at one time owned by the Diamond Creamery Company, which had record title thereof, and that it conveyed the same by warranty deed to plaintiff, which deed was recorded on October 2, 1911.  It is averred that the creamery company, while it still owned the land, gave defendant permission to lay a switch or spur from their line of railway across said strip, for the purpose of reaching the creamery, then owned and occupied by said company and its grantors, the Simpson-McIntyre Company; that defendant has no record title to the premises, and no equitable interest therein; that it has occupied the strip by the license or permission of plaintiff's grantors, which was given so that defendant might reach the creamery plant then run by the grantors, and which permission allowed defendant to use said land for the purpose of taking cars to the plant of the creamery company, and for no other purpose; that the creamery company and its plant no longer exist, and the creamery company has sold the land occupied by them when they were operating, including the land occupied by said switch or spur.  In essence, plaintiff asserts that defendant has no record title to the premises occupied; that it claims a perpetual right to maintain and operate said spur or switch by virtue of having had occupancy for more than 20 years; that in truth it had nothing but a permissive license to use the land for a switch and switching purposes, and had made no other use thereof; that plaintiff and his grantors have been in adverse possession for more than 20 years; and that defendant refuses to condemn the land for railway purposes or to purchase from plaintiff, but claims the land in its own right, by virtue of adverse possession.  He prays decree that defendant has no right, title or interest; that the title to the land occupied by the spur is in plaintiff, and that it be

quieted in him; that defendant be enjoined from using the spur and ordered to take up its rails and ties within 60 days from the date of the decree; and that, upon failure, said rails and ties be decreed to be part of the real estate.

Defendant avers that plaintiff has at no time owned the land included in said right of way; that it is the absolute and unqualified owner of all of the right of way, and has at all times held same in good faith and for railway purposes; that it has been in open, adverse and notorious possession of all the strip intended to be put in issue by the petition, and under color of title and claim of right, and has held the same during all said time, openly and adversely to all persons. It bases these claims upon the allegation that, in 1892, oral contract was made between it and the firm of Simpson-McIntyre & Company, whereby it was mutually agreed that said company should purchase said land and donate it to defendant, in consideration of its agreement to build a railway track of sufficient length to reach the creamery of said company, and to maintain said track connected with the creamery while same was in operation; that both carried out this agreement, and thereupon, defendant assumed absolute control, possession and ownership, and at large expense built said spur on the strip; that so it paid full and adequate value for the land; that its track was constructed upon condition and in consideration of the defendant's having the right to perpetually maintain the same, and would not have been constructed by it without such understanding and agreement, the understanding and agreement being that the spur was to be the property of defendant, without condition or reservation, except that it should connect with the creamery company as long as it should be operated at its then location; that the cost of what was done by defendant was in excess of the value of the right of way, all of which was expended upon the faith that defendant had a perpetual easement and a good right of way title.

Another branch of its claim is that defendant has for

many years used said line of railway, not only to serve the creamery company, but to serve other business houses and industries which have been built up with the knowledge and acquiescence of all parties; that defendant claimed absolute and unqualified ownership and title to the land in controversy; and that Simpson-McIntyre & Company, and all persons claiming through or under them, have at all times acquiesced in defendant's ownership and possession of the land, and for more than 20 years last past have had full knowledge of defendant's color and claim of title, and have known of other industries' being located upon and served with railway facilities of the said line of railway, and are, therefore, estopped from now claiming any interest whatever. It asks the dismissal of the petition, and decree quieting the title to the right of way, and establishing its title to a perpetual easement and right of way.

II.   The assertion of a parol gift and the claim of title by prescription creating perpetual easement are somewhat confused by appellant, but are really distinct. If there was 1. RAILROADS: a parol gift and an acceptance, and such right of way: mode of acquiring: parol gift. gift may lawfully be made, appellant needs no prescriptive rights. It would have full right by grant. It is a most serious question whether there can be an effective parol gift—the equivalent of a common-law dedication—to a railroad corporation.

The text in 3 Elliott on Railroads, Sec. 947, declares that whether land can be acquired by a railroad company through a common-law dedication must be considered an open question; that it has arisen in a number of cases, in some of which it is said that a railroad is so far a public highway that, whenever the owner of land has shown by an unequivocal act or declaration a purpose to dedicate the land to the use of the railway, and the company has acted in reference to and upon the faith of such declaration, it has complete title. It points out, however, that at common law a parol dedication can be made only to the public, and that, since

the. lands acquired by a railroad corporation for the purpose of its enterprise are, so far as the right of property is concerned, strictly private property, over which the corporation exercises exclusive control, the better opinion seems to be that property cannot be dedicated by a common-law dedication for a right of way, unless the dedication is made in accordance with some statute by which platting is given the force and effect of a grant, in which case the intention to dedicate must be evidenced clearly by the plat alone, and may not be proved by parol.

*Watson v. Chicago, M. & St. P. R. Co.* (Minn.), 48 N. W. 1129, citing cases from Ohio, Illinois and Kentucky, holds that a common-law dedication of land cannot be made to a railroad company for public use for railroad purposes, and it criticizes cases which merely assume that such a dedication may be made. *Lake Erie & W. R. Co. v. Whitham* (Ill.), 40 N. E. 1014, distinguishing *Smith v. Town of Flora,* 64 Ill. 93, holds there cannot be a common-law dedication of land to a railroad company, because such companies are essentially private corporations. On the other hand, it is held in Indiana and in Texas that there may be such dedication, and that acting on the faith of a verbal agreement to give the right of way will constitute both dedication and acceptance. *Sherlock v. Louisville, N. A. & C. R. Co.* (Ind.), 17 N. E. 171; *Texas & N. O. R. Co. v. Sutor,* 56 Tex. 496; *Texas & P. R. Co. v. Gaines* (Tex.), 27 S. W. 266; *Campbell v. Indianapolis & V. R. Co.* (Ind.), 11 N. E. 482. There is a remarkable paucity of authorities determinative of the point. We think those discussed constitute about all, and that additional citations on the point have no bearing.

*Goulding v. Shonquist,* 159 Iowa 647, holds no more than that title to real property may not be acquired merely by open, notorious and adverse possession for the statute period.

*Hamilton v. Wright,* 30 Iowa 480, does no more than announce the general proposition that an entry by one without color of title or claim of right may subsequently become

adverse by his acquiring and asserting a claim of title, and that the statute would run from then, and does not touch whether a common-law dedication may be made to a railroad corporation. Its only other holding is that it is unnecessary to take and hold possession under both color of title and claim of right, and that, to constitute the first, a paper title is necessary, while the latter may exist wholly in parol.

*Hargis v. Kansas City, C. & S. R. Co.* (Mo.), 13 S. W. 680; *Libbey v. Young,* 103 Iowa 258; *Cogsbill v. Mobile & G. R. Co.* (Ala.), 9 So. 512; *Florida Southern R. Co. v. Loring* (C. C. A.), 51 Fed. 932, and *Campbell v. Indianapolis & V. R. Co.* (Ind.), 11 N. E. 482, are in essence holdings that, where a railroad company enters on land with leave, and constructs and runs its road on the faith of the license, it will be presumed, as against one claiming under the license, in the absence of any limitation to the contrary, that the right of way thus acquired extended to the full statutory width of right of ways.

While *Morgan v. Railroad Co.,* 96 U. S. 716, in a sense assumes that there may be such dedication, by proceeding as though there were power to make it, the real decision is whether a dedication made by plat is sufficiently definite and, therefore, estops the revoking of the dedication.

*Wickersham v. Orr,* 9 Iowa 253, does not deal with a grant to a railroad, and holds that, between the grantee and a third party claiming an interest in land granted, the claimant may show a parol agreement whereby such interest was created; and that, while the authorities are not entirely uniform nor, in many cases, free from obscurity, they hold that, if plaintiff builds a wall under parol license from the owner, and a third person takes part of the lot from the owner with notice of such license, the interest may not be revoked by either the owner or his grantee. *Des Moines & Ft. D. R. Co. v. Lynd,* 94 Iowa 368, is a grant by plat. The power to make a common-law dedication is not the subject of dispute, but seems to be assumed by all parties.

It is said in *Clark v. Wabash R. Co.*, 132 Iowa 11, at 14, by way of argument only, that one method of acquiring right of way is by prescription; and *Hibbs v. C. & S. W. R. Co.*, 39 Iowa 340, and *Conger v. B. & S. W. R. Co.*, 41 Iowa 419, at 422, hold that, though plaintiff knowingly permits defendant to enter on his land and build its road, this does not estop him from maintaining an injunction to restrain defendant from using the right of way without making compensation therefor.

As the point is given no great consideration by appellee, and in view of the condition of the law on the subject, and of the fact that decision may be reached without determining this point, we do not make it the basis of our decision, but confine ourselves to an investigation of whether, under all the circumstances disclosed in the record, appellant has established the parol gift upon which it relies.

### 2.

The sole evidence on what was done is that, before the track was laid, the roadmaster of appellant met Mr. Simpson, of Simpson-McIntyre & Company. They went over the ground where the engineers had set stakes to mark out the line of the switch, and thereupon, Simpson said: "The land is yours. Go ahead and take it." Upon this, the roadmaster said he would like to have Simpson go with him, and have him say what he wanted in regard to tracks. Taking these words literally, they give absolute ownership of the land, not only for railroad purposes, but for any purpose. The statement, "The land is yours. Go ahead and take it," taken alone, and literally, goes beyond what appellant now claims for it. But, as seen, it does not stand alone, and we must resort to all the attendant circumstances that throw light upon the mutual intent. At the time of speaking, there was no one to serve with the proposed switch except the plant of the speaker, and he had no interest in a switch except to get one that would serve his plant; and it may well be said that

the statement made by Mr. Simpson had that condition in mind, and that the words used, which may so easily have been enlarged and colored through the lapse of time since 1892, were addressed to that situation. All of which has a most material bearing on whether there was a gift of land in perpetuity for the purpose of operating the proposed switch track, or whether what was done was not, instead, a gift of land for the purpose of enabling appellant to serve the mutual interest of Simpson-McIntyre & Company, so long as the creamery plant had any interest to serve by having a switch track.

There was no occasion for plaintiff to literally have the title to the land. It appears further that appellant never paid taxes on this land, or had it certified to the auditor as land to which title had been given it; that appellee and his grantors paid the taxes ever since 1892; that, when Simpson-McIntyre & Company bought the land in order to carry out its agreement with appellant, they had title thereto put in their name, and not that of appellant. And in Paragraph 3 of cross-petition, appellant says, after stating that Simpson-McIntyre & Company should procure the land for a right of way, and donate it or convey it, and that, in consideration thereof, defendant agreed to build a railway track, that "defendant agreed to build a railway track of sufficient length to reach said Simpson-McIntyre & Company's creamery, known as the Diamond Creamery Company, and to maintain the said track connected with said creamery while the same was in operation."

The argument that all this is overcome because a railroad "is naturally a perpetual thing," and it must be presumed also that a perpetual easement was intended and accepted by the railway company, does not seem persuasive. And so of the other, that, even had the Diamond Creamery Company no further use for railway connection, the railway company had expended a large sum in building and maintaining its railroad; that the original donor got railway con-

nection with its plant, which may have been the moving cause for the gift of the right of way; and what he contracted for; and that, on the other hand, the railway company assumed the obligation of maintaining and operating its railroad in perpetuity. What induced the railroad company to act, and how much that cost it, is no proof of what contract was made. In the last analysis, it is its position that, if one have a railroad build a switch to his barn as the only terminal, and the rails stay more than 10 years, it may thereafter make that switch part of its main line, to serve some town built after the switch was laid down. It is not straining to put the claim made within the class of cases that requires clear, definite and satisfactory proof, where title to land is to be changed by oral gift. We think appellant has failed to establish the gift it claims.

III. Appellant points out the open and notorious use it made of the switch by operating its trains upon it, and the expenditures in making and maintaining the track. It insists that this gave notice of adverse claim such as set the statute to running. Part of the argument rests upon cases like *Clark v. Gilbert*, 39 Conn. 94, 95, *Schafer v. Hauser* (Mich.), 35 L. R. A. 835, *Vannest v. Fleming*, 79 Iowa 638, and possibly *Wickersham v. Orr*, 9 Iowa 253, which, in effect, hold that, where possession is taken under a parol gift, the donor of necessity knows that use thereafter is adverse. It suffices to say, we have found there was no parol gift, and that none of these were decided under such statute as we now have. We are cited to many authorities for the general proposition that certain acts of ownership openly and notoriously done for the requisite period will make a prescriptive title, and be sufficient notice to set the statute to running. 3 Elliott on Railroads, Sections 947, 948; *Crary v. Goodman*, 22 N. Y. 170; *Eldridge v. Kenning*, 12 N. Y. S. 693; *Murray v. Hoyle* (Ala.), 9 So. 368; *Campbell v. Indian-*

2. ADVERSE POSSESSION: nature and requisites: claim of right: notice of claim: use as evidence: railway easement.

*apolis & V. R. Co.* (Ind.), 11 N. E. 482. Many more may be found, but they do not rule the question at issue. When all is said, the notice consisted of patent use. Use for the first 12 years certainly did not advise that the right was claimed to use the switch after the creamery plant had gone out of existence, or an assertion of right to use for the service of others than the creamery company; for, during the first 12 years the company was operating, there was no one but the creamery company to serve. Whatever cases cited may do about it, our decision is controlled by Section 3004 of the Code, which provides that, in actions in which title to an easement in real estate is claimed by virtue of adverse possession for the period of 10 years, "the use of the same shall not be admitted as evidence that the party claimed the easement as his right, but the fact of adverse possession shall be established by evidence distinct from and independent of its use, and that the party against whom the claim is made had express notice thereof." We said of this section, in *Preston v. Hull,* 77 Iowa 309, that, where it is not claimed there had been adverse use of a flow of water for 10 years, and there is no evidence other than the mere use, and none that defendant had express notice, the claim was adverse,—that, under the provisions of this section, plaintiff acquired no right to continue the flow of water on defendant's land.

We decline to assume that *Erickson v. Johnson,* 172 Iowa 12, intends to repeal a statute, and find it does not attempt it. It deals with acts constituting notice, and says, merely by way of argument:

"Some of the cases go so far as to hold that where possession is so open and notorious as to raise a presumption of disclaimer of title, actual notice need not be shown, and that disclaimer of the title of the defendant and ouster may be implied from open and notorious possession."

On examination, it will be found that the case really involves the rule that, where one cotenant makes or openly takes under a deed conveying all, it constitutes a repudiation

of the trust relation.   Be that as it may, it is clearly a case
within the other rule that, where there is a gift or grant, the
grantors must, of necessity, know that use thereafter is ad-
verse.   We say therein that we shall not attempt to review
the cases, but that some of them hold that where, as is the
case between Erickson and Johnson, a person takes posses-
sion of land under a deed, the fact that he pays the taxes,
breaks up the land, tiles the land, erects buildings, makes
improvements thereon, cultivates the land year after year,
pays off the mortgages, mortgages and remortgages the prem-
ises, makes application for mortgages in which he claims abso-
lute ownership, pays ditch taxes, and openly claims to be the
owner of such land for a period of 10 years, with the knowl-
edge of a cotenant, such possession is adverse, and the stat-
ute of limitations runs as against such cotenant.   The case
is not authority for a claim that the mere use of a switch
track, under the conditions disclosed in this record, was suf-
ficient notice under this statute to initiate title by adverse
possession.

2.

It should be added that possession was taken and use
had upon consent; that, at the time consent was given, it was,
of necessity, for the benefit of the creamery company; that
the track was not used for the benefit of anyone else until
late in the fall of 1904 or the spring of 1905; that, therefore,
waiving all else, the use for the first 12 years was not only
permissive, but entirely in harmony with the idea that the
only right to use claimed was to serve the creamery company;
wherefore, the statute of limitations did not start during the
first 12 years.   And if it be conceded that the statute could
run, and prescriptive title could be made as to the use for the
benefit of the industries subsequently built upon the switch
line, such use, at all events, did not continue for 10 years
prior to the bringing of suit, on August 30, 1913, because the
additional industries were created in the summer of 1907.

3.

As to the claim that possession for more than 20 years by a railway raises a presumption that such possession was under claim of right, and adverse, *Alexander v. Gibbon*
3. ADVERSE POSSES- (N. C.), 24 S. E. 748, holds the presumption
SION : nature is that possession of land unexplained is ad-
and requisites :
easement : pos- verse.  So far from so holding, *Atkinson v.*
session : pre-
sumption. *Smith* (Va.), 24 S. E. 901, holds that there is no presumption that adverse possession once proved continues until the contrary appears, but its continuance for the statutory period under a claim of color of title must be proved.  *Barnes v. Light* (N. Y.), 22 N. E. 441, is that, in ejectment, where there is testimony that plaintiff and his grantors had cultivated a portion of land in dispute for over 20 years, and that from another portion they had occasionally cut wood and timber, and had maintained a fence separating such tract from the lands of defendant, it is a jury question whether such testimony is sufficient to uphold a title by adverse possession, and that in such case it is not necessary for plaintiff to show that he ever made claim of title to the land by word of mouth.  And this case cites *La Frombois v. Jackson*, 8 Cow. (N. Y.), at 603, for the statement that:

"The actual possession and improvement of the premises as owners are accustomed to possess and improve their estate, without any payment of rent or recognition of title in another  .  .  .  , will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner, and, unless rebutted by other evidence, will establish the fact of a claim of title."

To this is added that possession, accompanied by the usual acts of ownership, is presumed to be adverse until shown to be subservient to the title of another.  The only holding of *Wollman v. Reuhle* (Wis.), 80 N. W. 919, is that notorious, uninterrupted and unexplained possession for 20 years up to a fence, is adverse as well against the neighbor across the fence as against anyone else.  *Bishop v. Bleyer* (Wis.),

81 N. W. 413, is that, where a purchaser was shown a tract enclosed by fences which were supposed to enclose the tract purchased, and he went into possession, and held open, visible and notorious possession between the lines of his fences for 40 years, supposing it was the land conveyed by his deed, —that, notwithstanding he disclaimed all land not included in his deed, he was entitled to the land between the fences, as against the legal owner, in the absence of evidence that the possession was permissive or subservient to his title. We fail to see how these repeal our statute.

### 4.

Appellee does not claim the rails and ties and fence, and asks nothing except that the easement terminate. This distinguishes this case from *Beatty v. Gregory,* 17 Iowa 109.

IV. *Des Moines & Ft. D. R. Co. v. Lynd,* 94 Iowa 369, works out an estoppel, part of which rests on payment of taxes and a construction of the improvements; but these acts

**4. Estoppel: equitable estoppel: estoppel available to noncomplainant: effect.** followed dedication by plat, and acquiescence in what the plat shows. How does this sustain a plea of estoppel resting on injury to those who built after the canning plant existed, or after same had been abandoned? If the plaintiff is not affected by a parol gift, and had no proper notice of adverse use, the fact that others than defendant will suffer, does not affect plaintiff. At all events, this is an estoppel which, if it were conceded that the others have the right to invoke, it would not be easy to understand how defendant may build an estoppel out of the claim that someone other than it, and who, so far as the record shows, is not complaining, will else be injured.

It is our judgment that the decree below should be, and it is,—*Affirmed.*

Gaynor, C. J., Ladd and Evans, JJ., concur.